## Sykes *versus* Packer.

| | |
|---|---|
| 99 | 465 |
| 140 | 497 |
| 99 | 465 |
| 143 | 8 |
| 146 | 474 |
| 99 | 465 |
| 160 | 5 |
| 99 | 465 |
| 171 | 603 |
| 99 | 465 |
| 214 | ¹108 |
| 214 | ¹464 |

1. An employer does not impliedly guarantee the absolute safety of his employés. In accepting an employment the latter is assumed to have notice of all patent risks incidental thereto, or of which he is informed, or of which it is his duty to inform himself, and is further assumed to undertake to run such risks.

2. A master discharges his full duty toward his servant when he provides for him in such a manner as he fairly and reasonably deems prudent and safe.

3. A., a builder, who was himself employed in erecting a certain iron structure, engaged B., a laborer, to assist him. When several of the rafters had been put in place, A., by the advice of an experienced rigger, directed certain tackle supporting the building to be removed. Shortly afterwards, A., who was aloft, on the roof, called B. to come and assist him. B., knowing nothing of the removal of the tackle, went. While working alongside of A. the building fell, and B. was seriously injured. In an action by B. against A., to recover damages for the injury, the court charged, that if defendant caused to be removed a support essential to keep the building in position, without notifying the plaintiff, and the plaintiff did not know of such removal, and it was improper to cause such removal, then the defendant was guilty of negligence. *Held*, that this was error. The jury should have been instructed that if the defendant acted in good faith in directing the removal of the tackle, believing, according to the best of his judgment, that there was no danger in so doing, he was not guilty of negligence. They should also have been instructed that the omission of the defendant to notify the plaintiff of the removal of the tackle did not constitute negligence, as the plaintiff must be held to have been cognizant of that which was clearly visible to his sight.

January 26th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas No. 4, of *Philadelphia county :* Of July Term 1881, No. 82.

Case, by Morton A. Packer against Loftus Sykes and Joseph Sykes, trading as L. Sykes & Son, to recover damages for an injury to the plaintiff caused by the alleged negligence of the defendants.

On the trial, before BRIGGS, J., the following facts appeared :—The defendants were builders of iron structures, and were engaged in the construction of an iron shed upon a pier on the river Delaware. In this work they had employed the plaintiff as a rigger. The defendant, Joseph Sykes, being aloft upon a rafter, resting upon iron columns, for the support of an iron roof, directed the plaintiff to come up and assist him in his work. He did so, and in a few minutes the building fell, precipitating both Sykes and the plaintiff, and others, to the ground, whereby the plaintiff was injured. The testimony showed that the rafters, after being placed in position, had been held in place

by two sets of blocks and tackle, and that, a short time before the plaintiff mounted the rafter, one set had been removed by permission of one of the defendants. A witness testified: "I am a rigger; arranged the guys and tackles myself. One guy was removed. I took it off. I asked Mr. Sykes whether I could, and he said yes. The other tackle stood still. The tackle I took off I wanted for something else." The plaintiff was not informed of the removal of the tackle. No witness testified that the accident was directly caused by the removal of the tackle, but there was some evidence that another workman, who had been on the rafter with Sykes, became nervous because "the thing shook," and he was told to go down and send plaintiff in his place. The same witness said that in his opinion the accident would not have happened if the block and tackle had been left there. At the close of the plaintiff's case, the defendant moved for a non-suit, which was denied.

The defendants' counsel, in his opening to the jury, began to refer to the mode of erection of the structure, when he was stopped by the judge, who said the question was whether the tackle was taken away—that defendants were liable, if either of them ordered the tackle to be taken away without notifying plaintiff.

The defendants requested the court to charge that, under all the evidence, the verdict should be for the defendants. Refused. The court, in the charge, said: "It is alleged by the plaintiff, that the defendants caused to be removed a support essential to keep part of the structure in position, without notifying the plaintiff of the removal. If you find this to be so, and the plaintiff did not know of the removal, and that it was improper to remove it, then it is negligence on the part of the defendants."

Verdict for the plaintiff for $500, whereupon the defendants took this writ of error, assigning for error, the refusal of their point, and the portion of the charge above quoted.

*Joseph M. Pile* (*McKinley* with him), for the plaintiffs in error.—The court instructed the jury, in effect, that an employer engaged with his workmen in a hazardous employment, is not only bound in law to know the effect of the shifting of supports in a building which he is erecting, but that, while he is sharing the risk of the removal, he is bound specially to call the attention of his workmen to the fact, though they are beside him, and have the means of knowing. In other words, if it could be subsequently shown by the effect of the removal, that if it had not been made the building would not have fallen, though the builder honestly exercised his judgment as a builder, and stood beside his men exposed to the same danger, he is responsible if

[Sykes *v*. Packer.]

one of his men is injured.    This is not the law: Railway Co.
*v*. Bresmer, 1 Out. 103 ; Priestley *v*. Fowler, 3 M. & W. 1.

*Albert E. Peterson* and *Wm. W. Wiltbank*, for the defend-
ant in error.—If the master subjects his servant to dangers,
such as he ought to provide against, he is liable for an accident
resulting from them.    The servant's primary duty is obedience,
and if in the discharge of his duties he is damaged, through the
neglect of the master, the latter is liable for the injury ; and the
master is bound to furnish and maintain suitable instrumentali-
ties for the duties required of his servants ; and if he does not
he is liable for injuries arising from his neglect : Patterson *v*.
Pittsburgh and Connellsville R. R. Co., 26 P. F. Smith 389 ;
Oak Ridge Coal Co. *v*. Reed, 5 W. N. C. 3 ; Coal Company *v*.
McEnery, 8 W. N. C. 81 ; Baker *v*. Allegheny Valley R.
R. Co., 9 Id. 337 ; Bressmer *v*. R. R. Co., 1 Out. 103 ; Clarke *v*.
Holmes, 7 Hurlst. & Nor. 937 ; Snow *v*. R. R. Co., 8 Allen 444 ;
Gilman *v*. R. R., 10 Id. 233.

Mr. Justice MERCUR delivered the opinion of the court, May
1st 1882.

The plaintiffs in error are builders of iron structures.    They
were engaged in the erection of an iron building over a pier on
the wharf.    The work was being done according to plans pre-
pared by an architect of large experience, and as he testifies, he
was " from time to time " superintending the same : but was
not present when the accident occurred.    The rafters were to
rest on iron columns, and were put in place by the aid of block
and tackle.    Both parties, and riggers, and laborers, were
engaged in the work.    Three or four of the rafters were in
place.    While the plaintiff and defendant and other employés
were on the girders or rafters, three of the rafters fell, and the
defendant in error was injured.    The evidence is conflicting as
to what caused them to fall.    Some witnesses testified it was
the removal of one block and tackle ; another that it was by
reason of the lower structure not being of sufficient strength, and
" was not put in the place it should have been ;" still another,
that it was caused by a steamboat striking the wharf next below,
with great force.

In opening the defence to the jury, the counsel referred to
the mode of erection, but the learned judge stopped him, and
said the question was whether the tackle was taken away, and
if so removed without notifying plaintiff, the defendants were
liable.

Afterwards evidence was given tending to show the rafters
fell from other causes than the removal of the tackle, yet the
court appears to have wholly ignored that evidence in the

charge. That portion thereof is assigned for error in which the court charged " it is alleged by the plaintiff that the defendants caused to be removed a support essential to keep part of the structure in position, without notifying the plaintiff of the removal. If you find this to be so, and the plaintiff did not know of the removal, and that it was improper to remove it, then it is negligence on the part of the defendants."

An employer does not impliedly guarantee the absolute safety of his employé. In accepting an employment the latter is assumed to have notice of all patent risks incident thereto, of which he is informed, or of which it is his duty to inform himself. Whart. on Neg. § 206. When therefore he undertakes hazardous duties he assumes such risks as are incident to their discharge from causes open and obvious, the dangerous character of which causes he has had opportunity to ascertain: Id. § 214. The master is bound to provide for the safety of his servant to the best of his judgment: 1 Addison on Torts, pl. 564. In most cases in which danger may be incurred, the servant is as likely to be acquainted with the probability and extent of it as the master. The latter is, therefore, not responsible for the damages attendant on the mounting of scaffolds, or unfinished staircases, landings or roofs, which the workman has voluntarily undertaken to mount, with as much knowledge of the attendant risk as the person who employs him: Id.

There was evidence that the defendant in error was employed as a rigger. Charles B. Smith, another rigger of large experience and a witness for him, testified that he arranged the guys and tackle himself, that " one guy towards the wharf was removed. I took it off. I asked Mr. Sykes whether I could, and he said yes. The other tackle stood still. The tackle I took off I wanted to use for something else. The remaining tackle was not taken away." Another witness testified that he removed the tackle by order of both the plaintiffs in error, and if the block had been left, the accident would not have happened.

The judgment of the plaintiff in error as to the propriety of removing this block and tackle, and as to the safety in so doing is shown by the fact that at the time of the accident he and the defendant in error, as well as others, were at work on the rafters, and plaintiff and defendant fell at the same time.

The defendant had as good an opportunity of seeing the condition of the tackle as any other employé had. He must be held to have known what was clearly visible to his sight. It was not necessary that he should be specifically informed of a fact so patent to him. It is not sufficient evidence of negligence, that a jury has now found it was improper to remove the tackle, judged by its effect. If an experienced rigger ad-

[In re Ridge Avenue.]

vised its removal, if the plaintiff in error assented to it in good faith, believing there was no danger in so doing, it was complying with the rule to provide for his servants, to the best of his judgment. The true question as to this branch of the case is, what was then fairly and reasonably deemed prudent and safe. He took as much care for the safety of his servant as he took for his own safety: Railway Company *v.* Bresmer, 10 W. N. 379. In view of the unquestioned facts his omission to notify the employee of the removal did not constitute negligence: Priestly *v.* Fowler, 3 Meeson & Welsby 1. The first specification is sustained. There was no error in declining to charge as requested under the second assignment.

Judgment reversed, and a venire facias de novo awarded.