## PHILAD. & R. R. Co. v. SARAH HUBER ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY.

Argued February 19, 1889—Decided October 7, 1889.
[To be reported.]

1. A railroad company owes to its employees the duty of exercising reasonable care in regularly inspecting cars, brakes and other appliances used by the latter, so as to ascertain if such appliances remain in a

suitable and safe condition, and to remedy any defects that may be discovered.

(*a*) A railroad brakeman, in assisting to shift a train, jumped upon a car just as the train was about to move, and proceeded to perform his duties thereon. While so engaged he fell upon the track, was run over and killed. In an action brought against the railroad company to recover damages for his death, there was evidence showing:

(*b*) That the brake upon the car was defective and dangerous, and had been negligently permitted by the company to remain so; that the defect was discoverable upon an attempt to use it, though its dangerous character might not become manifest under a moderate pressure, but no prior knowledge of it on the brakeman's part was shown.

(*c*) That the brakeman had but two or three minutes in which to become acquainted with the character and condition of the brake and determine whether or not he would use it or abstain from using it as unsafe, during which time he was necessarily occupied in uncoupling the cars and calculating and regulating their movement.

(*d*) There was no direct evidence that the defective brake caused the brakeman's fall, or that he was in the act of braking when he fell; but he was seen pulling on the lever just before his fall, and witnesses testified that such a fall might easily result from the slipping of the lever in an attempt to work the brake.

2. Upon these facts, the case was properly submitted to the jury with instructions to determine whether the defect in the brake was the cause of the brakeman's fall, and if so, whether he knew at the time of using it of its unsafe condition, and used it with and notwithstanding such knowledge.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 80 January Term 1888, Sup. Ct.; court below, No. 290 May Term 1884, C. P.

On April 12, 1884, Sarah Huber, in her own right, and Maria Edna Huber, a minor, by her mother and next friend, said Sarah Huber, brought case against the Philadelphia & Reading Railroad Company, to recover damages for injuries resulting in the death of Frederick A. Huber, the husband of said Sarah Huber and the father of said Maria E. Huber, the said injuries being charged to the negligence of the defendant company.

At the trial on March 28, 1887, the following facts were made to appear:

Frederick A. Huber had been in the employ of the defendant company for about nine years, and about four years of this time,

as a brakeman. On April 3, 1884, he was acting as a brakeman in a shifting crew employed at and about certain weigh scales at Pine Grove, Schuylkill county. At this point, loaded coal cars, coming from certain mines on defendant's road, were weighed, shifted and made up into trains. On the date named, this crew were engaged in shifting upon the weigh scales a small train of coal cars composed of one single or four wheeled car and two double or eight wheeled cars. The four wheeled car was in front, followed by and coupled to the two eight wheeled cars. The train was being moved toward the scales by means of an engine running upon a parallel track and connected by a rope with the rear car. Upon the front car was a brakeman, and there were two brakemen upon the car at the rear. Huber got on the train between the four wheeled car and the first of the eight wheeled cars, and, either at the time or soon after getting on, uncoupled the front car from the rest of the train, the purpose being to retard the motion of the eight wheeled cars and let the four wheeled car be carried upon the scales in advance of them by the force of momentum, so that it might be weighed separately. After the front car had been detached, Huber was left standing upon the front end of the remaining part of the train, and it then became his duty to brake the car he was on. When last seen he had hold of one arm of the brake-lever with his left hand and had his right arm hooked around the other arm. Something then caused him to fall upon the track in front of the moving car, the front truck of which passed over him causing almost immediate death.

The plaintiffs claimed from the testimony that the cause of Huber's fall was a defect in the brake he was using; that the brake was defective in that the hole in the lever, where it was fitted on the shaft, was entirely too large; and in consequence of this, as well as of the wearing away of the sharpness of its edges by constant use, the lever, although it might work properly under slight pressure, was likely to slip if any considerable degree of power were applied to it; and that the deceased lost his balance and his hold upon the lever when he was in the act of tightening the brake.

Henry Zimmerman, the engine driver in charge of the shifting locomotive, being called for the plaintiffs, testified as follows:

Statement of Facts.

Q. Did you see the accident? A. I seen him drop. Q. Did you see him while he still had hold of the brake, or after he had lost hold? A. When I had started out the rope was stretched, and he was in the rear of me, and as I was guiding the engine with the reverse lever they let those two double cars run faster than was calculated, and then he was right opposite me; he was standing then and had his arm hooked over the brake lever. Q. Was he pulling the brake at the time? A. Not at that time; he had the slack of the chain taken up, may be, for all I know. That was the kind of a position he was standing in, with his back towards me; then when we were approaching the scale within eighteen or twenty yards or steps, then he looked around to watch the scale, when he dropped. The last I saw he was kind of right oblique from me. I looked over the body of the car into his face. I yelled at him to hold on. Q. But it was too late for that? A. Yes, sir. Q. When he was braking this way, was it his duty to look down here on the brake, or to look towards the weigh scale to see that this car should be allowed to go on to the scale? A. He ought to know that. Q. He must look to see it, I suppose? A. Yes, sir. Q. Did you see him when he jumped on the car? A. No, sir. Q. How long did it take from the time you first drew on the rope to send the first car over by force, until you saw him fall from the car. A. I cannot tell; it might have been a few minutes. Q. It was a very short time? A. It might have been a few minutes, for all I know, I did not make no time. Q. How far were the cars from the scale when you first started to move them? A. In the neighborhood of fifty yards, more or less. Q. How far was the scale from the car where you saw him fall? A. The length of a rail, that is, where the car had crossed, but he had dropped before that. Q. How far was it from the scale where he dropped? A. Eighteen or twenty odd steps, in the neighborhood of that. . . . .

Q. How far was Huber's car from the scale when the accident occurred? A. In the neighborhood of eighteen or some twenty steps, that is when he dropped, when he pulled on the brake, in the neighborhood of that. Q. How far was he from the scale when he fell off? A. He must have dropped pretty near the same time. Q. So that when you discovered him under the car he was about the eighteen or twenty steps away

from the scale still? A. No, sir; he was closer to the scale; it must have rolled him some. Q. How far away from the scale was it, do you think? A. Might have been eighteen feet, it was the length of a rail or twenty feet. I did not take notice to it then. Q. When you speak of steps you mean yards? A. Yes, sir. Q. You say that Mr. Huber had his arm around the brake? A. Had his arm hooked over the lever, the time he was standing 'on the car. Q. You do not know what it was that caused him to fall? A. No, sir. Q. The time you saw Mr. Huber with his arm around the brake was previous to the time he dropped off the car; before he dropped off the car you saw him with his elbow around the lever of the brake? A. Yes, sir. Q. You do not know whether Huber did apply the brake or not, do you? A. He pulled on it; that was the time he swung himself into it. Q. What do you mean by pulled on it? A. When he was applying the brake. Q. Tightening it? A. Yes, sir; might have merely had the slack of the chain taken up in the first place. Q. What could he have held at, if it slipped and you heard it—you say you heard a sudden snap yourself? A. No, sir; I seen a sudden jar. Q. What made the jar? A. I do not know.

James Manweiler, the conductor of the train, testified that Huber was on the cars when they were one hundred yards away from the scale. No witness saw the deceased fall, and no witness other that Zimmerman saw him using the brake, but several testified that he was upon the platform of the car and at the brake just before the accident, and there was evidence that the slipping of the brake-lever might very easily cause him to fall upon the track.

There was no evidence that Huber had ever seen this brake prior to getting upon the car just before the accident, or that its condition was known to the superintendent or any other officer of the company. A number of witnesses for the plaintiff testified, however, that the defect in it was obvious on inspection, and that a brakeman seeing it ought not to attempt to use it. John Carr, the foreman of the car shops at Palo Alto, testified, after seeing the brake, that manifestly it had not come from the shop in its present condition; that brakemen were in the habit, when coming down mountain grades, of removing the brake-levers from the shafts, to enable them

to keep their seats on the cars and work the brakes without moving, and that this lever had doubtless come from the brake of some other car. There was testimony that the company kept up a regular inspection at Pine Grove of all cars passing that point, but it appeared that the inspectors would not mount the cars to examine the brakes and levers, and that they were not required by the rules of the company to do so.

At the close of the testimony, the court, Green, J., charged the jury at length upon the legal relations subsisting between the defendant and its employees and between the employees themselves, in respect to the liability of the company for an injury to one of the latter; and, submitting to the jury to find from the testimony whether the brake was defective or not, whether or not the deceased came to.his death in consequence of the defective character of the brake, whether or not, under the evidence as to inspection, etc., the defendant company had exercised reasonable care in keeping their brakes in proper and safe condition, and whether or not the deceased had exercised reasonable and proper care in using the brake, if its defective character was the cause of his fall, concluded as follows:

The following points for instruction are submitted on behalf of the plaintiffs [inter alia]:

1. That it is the duty of an employer to furnish and maintain suitable machinery, tools, appliances and instrumentalities for the duties required of his employee, and if the employer fails to do this, he is liable for injuries resulting from his neglect in not doing so.

Answer: That point we affirm. I think all these points that have been submitted, have been substantially covered by what we have said to you in our general charge, but we will read these points and the answers to them, so that you may be sufficiently impressed with what we have said.

2. That if an employer subjects his employee to dangers such as in good faith he ought to provide against, he is liable for any accident resulting therefrom, while such employee is in the lawful pursuit of his employment and does not himself contribute to the injury.

Answer: This point we affirm.

3. That it was the duty of the Philadelphia and Reading Rail-

road Company, the defendant, to furnish and maintain such brakes and appliances that the deceased, by the exercise of ordinary care in using and operating them, could do so with safety ; and if the jury find from the evidence that the defendant failed in its duty in this respect, and that by reason of such failure the plaintiff's husband and father sustained the injuries complained of, the verdict of the jury should be for the plaintiffs.

Answer : This point we affirm, if you find that the defendant failed to exercise reasonable care in performing the duty. The point states "failed to perform its duty," the duty of, keeping it in repair, as though it were an absolute thing. We change that and say, failed to exercise reasonable care in performing the duty and that the injuries sustained were occasioned by no fault of the deceased.

4. That if the jury find from the evidence that the brake and its appliances were not such a tool as the deceased could safely use, either by reason of original bad construction, or by failure of the defendant to keep it in reasonable repair, so that the deceased, exercising ordinary care, could use it with safety, and that by reason thereof the deceased, while using it with ordinary care, under the circumstances, lost his life, the verdict should be for the plaintiffs.

Answer: This point we affirm, if the jury find that the defendant failed to exercise reasonable care and caution in keeping the tool in suitable repair.

5. That even if the brake and its appliances were of such device and character that the deceased could safely use it by the exercise of ordinary care, it was the duty of the defendant to maintain it in such condition, and if the jury find from the evidence that the defendant failed to do so, and that the death of the deceased was caused thereby, the verdict must be for the plaintiffs.

Answer: This point we affirm, but with the same qualification stated in the two preceding points ; that is, that it imposed the duty on the defendant of exercising reasonable care in order to maintain it in proper condition.

6. That if the jury find from the evidence that the death of the deceased was caused by the slipping of the brake-lever on the brake-shaft, thereby causing deceased to lose his hold and fall under the car, and that a proper and careful inspection of the

brake and its appliances would have disclosed its defective or unsafe condition, and that the defendant failed to have such inspection made, the defendant was guilty of negligence, and if such negligence was the cause of the injuries sustained by the deceased, the verdict must be for the plaintiffs.

Answer: This point we affirm, with the same qualifications that we have already stated.

9. That it was not his duty to inspect either the car or the brake, but that he had a right to expect that the brake was in a'proper condition for its useful purpose, and if the jury find that in so using it, he was killed by reason of its unsafe condition, the defendant was guilty of negligence, and the plaintiffs should recover.

Answer: If the brake was in an unsafe condition by reason of the failure of the defendant to exercise reasonable care in keeping it in repair, and Huber lost his life by reason thereof, then the plaintiffs should recover, if the deceased lost his life by reason of no fault of his own.

The following are the points submitted by the defendant:

1. In a suit by an employee of a railroad company against the company for injuries, or by his representatives in case of loss of life, negligence in the company cannot be inferred, but must be affirmatively proved by the plaintiff; and the presumptions are against the employee if he is hired by the company and in his regular employment at the time of this accident or injury.

Answer: That point we affirm.

2. If the brake was in a defective condition from an external, apparent fault, one that could be seen by the eye, produced by time and use, not brought to the knowledge of the railroad company, the defendant, the railroad company, would not be guilty of negligence.

Answer: This point we decline to affirm. We think the defendant was bound to exercise reasonable care in making repairs, so as to keep it in suitable condition, and so as to ascertain whether the same remained in suitable condition.[1]

3. There is no evidence that the defendant, the railroad company, knew of any defect in the brake previous to the time of the accident.

Answer: This point we affirm. We think there is no evi-

dence of knowledge on the part of the railroad company or its superintendent.

4. There is no direct or competent evidence that the defective condition of the brake was the cause of the deceased, Frederick A. Huber, falling from the car and therefore the plaintiffs cannot recover.

Answer: This we refer to the jury as a matter of fact, and decline to affirm the point.[2]

5. The evidence in the case is abundant, both by the witnesses for the plaintiffs and the defendant, and is uncontradicted, that the deceased, Frederick A. Huber, had means to know that the brake on the car was in an unsafe condition to use, and his using it with that knowledge was contributory negligence; and, although the jury believe that the defendant did know or ought to have known that the brake was in an unsafe condition and continued it on the car, the plaintiffs cannot recover.

Answer: This we refer to the jury as a matter of fact. If the deceased used the brake knowing it was in an unsafe and dangerous condition, he took the risk and cannot recover.[3]

6. That if the jury believe that the brake on the car was defective, the evidence being that the cars of the defendant company were inspected daily, if the defect was one that could have been discovered by the inspectors, and they did not discover it, the defectiveness was because of the neglect of the inspectors, and they being fellow servants with Frederick A. Huber the deceased, and there being no evidence that the defendant did not exercise ordinary care in the selection of inspectors or continuing them in its employ, the plaintiffs cannot recover.

Answer: This point we affirm, if you find that the inspectors were negligent in the discharge of the duties imposed upon them, but if you find that the inspection was made in the manner directed by the company, or with the full knowledge of the company how it was made, and that that method was defective and not likely to discover breaks and faults, then the defendant would be liable for such negligence.

7. That under all the evidence in this case the plaintiffs cannot recover.

Answer: This point we decline to affirm, but leave the

matter to be ascertained by you, under the law as we have laid it down to you, and under the evidence in the case.[4]　We submit the case to you without further remark.

The jury returned a verdict in favor of the plaintiffs for $4,000, and judgment having been entered thereon, the defendant took this writ, assigning for error:

1–4. The answers to defendant's points.[1 to 4]

*Mr. John F. Whalen* and *Mr. James Ellis* for plaintiff in error:

1. The defendant's second point should have been affirmed. There being an entire absence of evidence as to the condition of the brake, when first put in use on the road, it is to be presumed that it was then a perfect brake. For all that appears in the testimony, its unfitness may have begun within an hour of the accident, in the manner explained by John Carr. The lever may have been put on this shaft by a brakeman at a distant point on the railroad, or by Huber himself. There is no doubt that the company did not know of it, but the defect was so apparent that Huber must have discovered it, as soon as he looked at the brake, or as soon as he put his hand on the lever. In such circumstances the company is not chargeable with negligence: Baker v. Railroad Co., 95 Pa. 211.

2. There was no evidence authorizing the court to refer to the jury the question whether the defective character of the brake was the cause of Huber's fall from the car. No one saw him fall. A short time before, he had the elbow of one arm around one arm of the lever and had hold of the other arm with his other hand. What is more likely than that his elbow hold gave way, considering the smooth surface of the arm of the lever and the liability of his arm to lose its hold on account of not having any grip on it? Who can say his fall was not due to making a misstep on the car, or that he did not have an attack of some kind, rendering him powerless to retain his hold? If the brake-shaft with a loose lever had not been discovered on the car, the accident would undoubtedly be attributed to one of these causes, and in the absence of evidence that the lever did slip and cause the fall, the defendant's fourth point should have been affirmed: Phila. & R. R. Co. v. Schertle, 97 Pa. 450.

3. The defective character of the brake was so obvious and apparent that any one who had his eyes open could see it. It is submitted, therefore, as a matter of fact that Huber must have known its condition when he used it, and his using it with that knowledge was such negligence on his part as would prevent a recovery: Phila. & R. R. Co. v. Schertle, 97 Pa. 450; Marsden v. Haigh, 14 W. N. 526; Cooper v. Butler, 103 Pa. 412; Mansfield C. & C. Co. v. McEnery, 91 Pa. 185; Brossman v. Lehigh V. R. Co., 113 Pa. 490; Pittsb. & C. R. Co. v. Sentmeyer, 92 Pa. 280; Wharton on Neg., § 208; Patterson's Railway Acc. Law, 47, 373, 376, 379. The fact is clearly settled that the misfit of the lever could be discovered by any one the instant he looked at it. Huber was on his car one hundred yards away from the scale, and it was his duty to be at the brake all the time until he got to the scale; therefore he must have noticed its condition. When the facts are clearly settled, the question of negligence becomes a question of law: 2 Wood's Railway Law, 1259; Rorer on Railways, 1054. As to the inspections, Huber was in daily contact with the inspectors, and could not help seeing their mode of inspecting cars at Pine Grove. As inspections are comprehended under the term "appliances," his failure to complain of any defect in the system would mean that he assumed the risk if there was any: Patterson Railway Acc. Law, 373; Wharton on Neg., § 234.

4. It is not enough for an employee to prove an injury. He must prove how it occurred and not by inference only, and he must overcome the presumption that the employer has not caused the injury. The presumptions are against the employee: Weger v. Railroad Co., 55 Pa. 460. He must prove not only the negligence of the employer, but also that this negligence was the cause of his injury. No witness saw what Huber was doing when he fell or could tell whether it was his hands or his feet that slipped. There is no evidence that he even had hold of the lever when he fell. There is not even a scintilla of evidence as to the most material fact in the case, the cause of his fall, and the case should not have been submitted to the jury: Phil. & R. R. Co. v. Schertle, 97 Pa. 450; Parrot v. Wells, 15 Wall. 524; Mansfield C. & C. Co. v. McEnery, 91 Pa. 195; Green & C. St. Pass. Ry. Co. v. Bresmer, 97 Pa. 103; N. C. Ry. Co. v. Husson, 101 Pa. 1; P. & R. R. Co.

v. Hummell, 44 Pa. 375; A. T. & S. R. Co. v. Ledbetter, 21 Am. & Eng. R. R. Cas. 555; Brossman v. Lehigh V. R. Co., 113 Pa. 490; Frazier v. Lloyd, 1 Mona. 113; Fair v. Penn. R. Co., 12 Cent. R. 530; Phil. & R. R. Co. v. Hughes, 119 Pa. 301.

*Mr. D. C. Henning*, for defendants in error:

1. Was the death of Frederick A. Huber caused by the negligence of the defendant? That the brake was unsuited for its purpose and dangerous to use, is admitted on all sides. The testimony of Zimmerman and all the witnesses familar with the duties devolving on the deceased, at the time and place of the accident, shows that he must have been in the act of braking at the time it occurred, and that his fall occurred in consequence of its defective character. The company was negligent in the matter of inspecting brakes and brake-levers. Therein it violated a duty it owed to the deceased: Schall v. Cole, 107 Pa. 7; Lee v. Woolsey, 109 Pa. 124; P. W. & B. R. Co. v. Keenan, 103 Pa. 126; Baker v. Alleg. V. R. Co., 95 Pa. 211; P. & N. Y. Canal & R. Co. v. Leslie, 109 Pa. 296; Patterson v. Railroad Co., 76 Pa. 393; O'Donnell v. Railroad Co., 59 Pa. 248; Mullan v. Steamship Co., 78 Pa. 25; Ford v. Railroad Co., 110 Mass. 240; Seaver v. Railroad Co., 14 Gray 466; Cayzer v. Taylor, 10 Gray 274; Coombs v. Cordage Co., 102 Mass. 572; Gilman v. Railroad Co., 10 Allen 233; Phila. & R. R. Co. v. Agnew, 11 W. N. 396; Pittsb. & C. R. Co. v. Sentmeyer, 92 Pa. 280; Johnson v. Bruner, 61 Pa. 61. The manner of inspection was approved by the superintendent.

2. Was Huber chargeable with contributory negligence? The question whether his manner of holding and using the brake contributed to his death, was fairly submitted to and determined by the jury. The defendant asserts that the condition of the brake was such that Huber could have seen, and must have known, that it was unfit for use. In view of the facts and circumstances which surrounded and preceded the accident, the evidence of contributory negligence asserted in this case was not of such character as that the court could pass upon it, but was to be submitted to the jury. Huber had never, so far as shown, seen this car before; he leaped upon it at a distance of about fifty yards from the weigh scales; it was then either moving or about to move; he first had to un-

couple the car in front of him, so that the momentum of the
train would at the proper time carry it ahead; then he had to
apply the brake to the rest of the train with sufficient force to
retard its motion, but with not so much as to prevent it from
being sent upon the scale with the same momentum; this re-
quired change of position, calculation of time and distance and
of the amount of force to be put upon the brake, etc., all in what
may be called a moment's time. These facts, in connection
with the further facts, that levers are frequently loose yet safe,
and that the company have a system of inspection at Pine
Grove which it claims to be good, and in connection with
Huber's right to rely upon the furnishing of proper tools and
their proper inspection, were things to be considered by the
jury in determining whether he was negligent. The questions
of fact in the case were fairly submitted by the court in ac-
cordance with established principles of law.

Opinion, Mr. Justice Green :

If there had been proof on the trial that Huber was ac-
quainted with the condition of the brake on the car upon which
the accident occurred, by having been on it and used the brake
at times prior to the accident, it would not have been possible to
sustain the verdict. All of the witnesses, and almost the whole
of them were witnesses for the plaintiff, who testified in regard
to the brake, said it was manifestly defective, and several of
them said it was unsafe and dangerous to use it. They also
said the defect could be seen at once upon looking at it from
above, or attempting to handle it; and any brakeman who was
certainly acquainted with it or had had sufficient opportunity
to become acquainted with it, and then used it, would have
been guilty of contributory negligence if an injury had re-
sulted from its use. But in this case there is no evidence
showing that Huber had ever seen the car or the brake before
the time of the accident, and whatever knowledge he had of it
must have been acquired during the brief period he was on the
car before he fell off. It was his duty to brake cars at this
particular place, and hundreds of cars were brought there every
day for inspection and weighing. The whole time occupied
in shifting a car on the scales was very short, indeed, and the
brakeman was obliged to be actively engaged from the moment
he boarded the car until it was weighed.

In this particular instance the deceased was engaged in braking a little train consisting of one single and two double cars loaded with coal. He was on the front end of the first double car, the single car being ahead. He had uncoupled the single car, and, as the testimony indicates, had hold of the brake at the front end of the car he was on. In this situation he fell and was run over by the car and killed. No one saw him in the act of falling, but he was at his post and had one arm around the lever, and was holding or working the brake, the moment before he fell. He was seen in that attitude at that time. The whole time from the commencement of the movement of the cars towards the scales, to the occurrence of the accident, was but two or three minutes; and in that very brief space and whilst engaged with the uncoupling of the cars and their movement, he had to become acquainted with the brake and either use it or abstain from using it because of its unsafe condition. There was evidence that it could be used with safety if only a moderate application of the brake was made, but that the lever by which the brake was worked had a tendency to slip up off the shaft, if a strong pressure of the brakes on the car wheels was required. We think it would be subjecting the brakeman to a too rigid measure of responsibility to say, as a matter of law, that in so very short an interval, and with his attention necessarily given to the uncoupling of the cars and also to the regulation of their movement, he was bound to acquire a knowledge of the defect in the brake and to abstain from its use.

The defect consisted of a too large opening in the lever for the head of the brake shaft to enter, so that the lever would slip without holding the shaft, when a hard pressure was applied. There was evidence that the shaft could be held, if only a moderate pressure was applied. The learned court below very fairly and correctly left it to the jury to say whether the deceased knew of the unsafe condition of the brake, and used it notwithstanding such knowledge, and charged them that if he did there could be no recovery. While the evidence is without contradiction that the brake was defective, and the defect could be discovered as soon as an attempt was made to use it, yet, considering the exceedingly limited opportunity which the brakeman had of becoming acquainted with it, it

was proper to leave that question to the jury for decision. It is entirely possible, and is consistent with the testimony, that the first pressure applied was moderate, and that it was only when this was increased that the dangerous character of the defect became manifest, but that at the same instant the lever slipped and the brakeman lost his hold and fell.

The only other serious question in the cause was, whether there was sufficient testimony to leave to the jury the question whether the deceased fell from the car in consequence of the defect in the brake. There was no direct and positive testimony to this effect. No person saw him fall while in the act of handling the brake, but that might be because no person saw the actual falling. But the evidence of at least one witness, Zimmerman, proved that he was seen with one arm around the brake-lever, and was pulling on the brake immediately before he fell. Other witnesses saw him standing on the end of the car where the brake was, also just before the accident, but do not speak of seeing him have hold of the brake. We think the testimony of Zimmerman was enough to carry the case to the jury and to sustain the verdict. The testimony of the witnesses who saw the deceased at his post immediately before he fell, is corroborative in its character, and as several of them describe how a fall might very easily result from the slipping of the lever in the effort to work the brake, it is scarcely permissible for a court to say that a jury might not infer that the accident occurred in that way.

Nor can it be said that this was a case in which the employee was better acquainted with the defect than the employer, and should have given information of it and abstained from using it. The evidence fails entirely to show such a state of facts. If it had shown them, we would not hesitate to apply the rule of contributory negligence. But here the testimony was very abundant that the company enforced a system of daily inspection of all cars at the place of this accident, and if this had been thorough, the defect in this brake should have been discovered. As to the deceased, there is no evidence that he ever handled or even saw this brake until he attempted to use it on this occasion. In such circumstances it would not be proper to visit him with the consequences of a knowledge of the defect, and a voluntary use of the brake notwithstanding such

knowledge. The question of Huber's knowledge of the condition of the brake and of the manner in which he used it, whether negligently or otherwise, was very carefully and correctly left to the jury, and by the verdict it has been found that he was not negligent.

We cannot say from a reading of all the testimony that it so conclusively appears he was negligent as to convict the court of error in submitting that question to the jury. It is one thing for a number of witnesses to say in court, with the brake before them and ample opportunity to examine the condition of the lever at the place where the shaft entered it, that the opening for the shaft in the lever was too large, and that the lever might slip off the shaft when it was used to apply the brakes; but it is quite a different thing for a brakeman who jumps on the car which is immediately started to be shifted, who must at once uncouple the car in front of him and then regulate the movement of the car he is on by applying the brakes, to stop to examine the condition of the machinery of the brake before he uses it, without his attention being called to any defect. In point of fact the car had almost reached its destination on the scales when Huber fell off, so that it would seem he did use the brake successfully for much the larger part of the distance. It is not for a court to say as matter of law, in such circumstances, that the brakeman was necessarily guilty of negligence in not discovering the defect in the machinery of the brake and ceasing to use it. That was the proper function of the jury.

Judgment affirmed.