IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA, 1891.

## JOHAN BEMISCH v. PERCIVAL ROBERTS.

143    1
178   401

143        1
33 SC ¹189

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 3 OF PHILADELPHIA COUNTY.

Argued April 9, 1891—Decided May 27, 1891.

[To be reported.]

(*a*) While the plaintiff, with other workmen employed at an iron mill, was pushing a vehicle known as a " buggy," loaded with bars of iron, a part of the load fell upon and injured him. The buggy was so constructed that by inserting in certain holes iron pins or rods, provided for the purpose, the accident could have been prevented.

(*b*) Such pins were not used in this instance. Testimony for the plaintiff tended to show that their use was prevented by the condition of the holes, being so worn and enlarged that they would not hold the pins; that the plaintiff had not assisted in loading the buggy, and did not know that the pins were not in place. This he could have ascertained by a glance.

(*c*) There was no evidence that the employer knew of the defect in the buggy. There were more than a hundred buggies at the mill from which workmen made their own selection when they had occasion to load one. There was some evidence that the load upon this particular buggy was improperly piled, and that this contributed to the accident:

1. The absence of the pins, the real cause of the iron falling off the buggy, being manifest and conspicuous, the plaintiff was bound to notice it, and was chargeable with negligence in failing to do so; wherefore,

VOL. CXLIII—1                                    (1)

he was not entitled to recover damages for his injury, in an action against his employer: Phila. etc. R. Co. v. Huber, 128 Pa. 63, distinguished.

2. Moreover, for the negligence of the plaintiff's fellow-workmen in voluntarily selecting and loading a buggy that was defective, when they were entirely at liberty to select one that was in good condition, the master was not responsible; and therefore, the plaintiff was not entitled to recover in any aspect of the case.

Before PAXSON, C. J., GREEN, CLARK, McCOLLUM and MITCHELL, JJ.

No. 222 January Term 1891, Sup. Ct.; court below, No. 215 June Term 1889, C. P. No. 3.

On July 9, 1889, Johan Bemisch brought trespass against Percival Roberts, trading as the Pencoyd Iron Works, to recover damages for personal injuries to the plaintiff, averred to have been caused by negligence of the defendant.    Issue.

At the trial on October 30, 1890, the following facts were shown:

The plaintiff on December 9, 1888, was working as one of a gang of men in the employ of the defendant, engaged in moving bars of iron in the yard of the Pencoyd Iron Works.   He had been employed at the iron works about one month, and had worked at this particular employment for about eight days. The iron was moved by means of vehicles, known as buggies, pushed by the men along a tram-way.   They were so constructed that, at certain places in the edges of the floor, there were holes or sockets for the reception of upright pins or rods about an inch in diameter and from twelve to eighteen inches in length, used for the purpose of preventing the load from falling off the buggies while they were in motion.   There were a large number of such buggies in the yard, and the workmen, when they had occasion to use one, made their own selection.

On the date named, while the plaintiff and four others were moving a loaded buggy, a part of the load fell off and injured the plaintiff.   There were no pins in the buggy.   Testimony for the plaintiff tended to show that the holes intended for the insertion of pins were so worn and enlarged that they would not hold the pins.   Robert Klau, a witness for the plaintiff, testified that the buggy was improperly loaded, short pieces of

### Statement of Facts.

iron being placed at the bottom of the load, and longer ones on top, instead of the opposite; that, if the buggy had been in proper order so that the pins could have been used, it could have been loaded in the way it was, and the accident would not have happened, but the manner in which the buggy was loaded "had a great deal to do with the accident." The plaintiff testified that he had nothing to do with the loading of that buggy; that it was loaded two days before by other workmen, and had stood in the yard, with the load on it, until the day of the accident, when orders were given to move it; that the plaintiff, though he saw what was loaded on it, did not notice whether there were any pins in it or not; that he "didn't care to notice, because that buggy was already loaded for two days;" that he had previously assisted to load buggies, and pins were always used, although he had never inserted them himself, as it was his "colleague's duty to do that."

Testimony for the defendant tended to show that the buggy in question was loaded on the day of the accident, the plaintiff assisting in doing so, the particular buggy having been selected by some of the workmen who loaded it; that the pin-holes were all right, and there was nothing to prevent the men who put the load on from inserting the pins, as it was their duty to do. Andrew Hopshell, the machinist at the iron works who had charge of repairs, and whose duty it was to repair buggies if notified that they were out of order, or if he saw that repairs were necessary, and other employees of the defendant, testified on his behalf that they examined the buggy on the day of the accident and found the pin-holes to be in proper condition, fit for use.

The testimony being closed, the court, FINLETTER, J., refusing a point presented by the defendant requesting that the jury be directed to find a verdict for the defendant,[1] submitted the case to the jury under instructions a summary of which is given in the opinion of the Supreme Court, infra. The jury returned a verdict for the plaintiff, for $1,500. A rule for a new trial having been discharged, judgment was entered upon the verdict on December 16, 1890; whereupon the defendant took this appeal, assigning the refusal of defendant's point[1] for error.

Arguments.

*Mr. John G. Johnson* (with him *Mr. Franklin Swayne*), for the appellant:

The accident resulted in part from the improper loading of the buggy, as appears from the testimony of the plaintiff's own witness. Such improper loading was due to the negligence of the plaintiff's fellow-workmen, for which the defendant was not responsible. Nor was the defendant responsible for the negligent choosing, by plaintiff's co-employees, of a bad buggy. But the defect complained of, to wit, the absence of pins, was so patent that in working about the buggy the plaintiff took the risks arising therefrom: Robb v. Connellsville Bor., 137 Pa. 42; Wood on Master & Ser., § 335; Thompson on Negl., 1008; Payne v. Reese, 100 Pa. 306; Sykes v. Packer, 99 Pa. 468; Brossman v. Railroad Co., 113 Pa. 498.

*Mr. William W. Wiltbank* (with him *Mr. D. M. M. Collins*), for the appellee:

1. The absence of the pins was the proximate cause of the injury. It cannot be pretended that there was any such arrangement of the bars on the buggy as would have produced the accident, had the pins been there. The fact that pins could not be inserted in the buggy was due to the negligence of the master, in the continued use of a defective appliance not of the ordinary character and not of reasonable safety: Titus v. Railroad Co., 136 Pa. 618. And the plaintiff was not bound, before obeying his orders to move the buggy, to stop his work and examine its condition critically, but had a right to suppose that it was in the ordinary condition and reasonably safe: Rummel v. Dilworth, 131 Pa. 509; McCombs v. Railway Co., 130 Pa. 182; Phila. etc. R. Co. v. Huber, 128 Pa. 63. There was, therefore, no contributory negligence on his part, and the question of the defendant's negligence was necessarily for the jury.

2. As to the choice of the buggy, the argument for appellant appears to disregard the substantial fact that the buggy had been supplied by the employer. It was not clear, as a matter of fact, that the servants had selected the vehicle in this instance. If there was evidence of this, it was furnished by the defendant, and there could not have been a peremptory instruction on the defendant's proofs. As a matter of law, we

Opinion of the Court.

submit that the court could not have held that, the master having provided his men with an appliance which was defective, and they having used it, the responsibility of the choice rested upon them, so as to make them really the suppliers of the vehicle. The recovery in McCombs v. Railway Co., 130 Pa. 182, could not have been prevented by the offer of evidence that the train, including the defective car, had been made up in some yard of the company by the action of other servants.

OPINION, MR. JUSTICE GREEN:

The learned court below correctly charged the jury that if the plaintiff, or those with whom he was working, selected the buggy, he could not recover; that the only negligence alleged against the defendant was that the pin-holes in the buggy were so enlarged as no longer to be fit to retain the pins or spikes, and if that was the condition of the buggy, and the defendant had notice of it, or ought to have known it, and yet had any person employed whose duty it was to keep the buggy in good condition, he did his whole duty to his workmen, and the plaintiff could not recover; that, if the manner of loading the iron on the car contributed to the injury, there could be no recovery; that if the plaintiff, or those who were working with him, were negligent, and their negligence contributed to the accident, there could be no recovery; that the plaintiff, and those who were working with him, were presumed to know how to operate the buggy, and wherein it was, or might become dangerous, and that they assumed all the dangers of that employment, and that the defendant was not responsible for any injury which was the result of a visible condition of the buggy; and that, if the defect complained of was visible, it was the duty of the plaintiff, and those working with him, to know that it existed, and to know the danger which was incident to that defect. Having given these perfectly correct and sound principles to the jury, he told them, if they found that the defendant was negligent, and the plaintiff was not negligent, then the question of damages would arise. He declined to instruct the jury to render a verdict for the defendant, in response to a request to that effect from the defendant's counsel.

A patient reading of the whole of the testimony convinces us that every one of the conditions of non-liability of the de-

Opinion of the Court.

fendant, stated in the charge, was established by the undisputed testimony in the cause, and therefore that the defendant's request for a binding instruction should have been granted.

There is no testimony in the cause that the plaintiff, and those working with him, were required to use this particular buggy. There were between one and two hundred buggies about the works, and the parties loading the buggy were entirely at liberty to select one that was in good condition, but they voluntarily chose the one that was used. The plaintiff said he did not assist in loading the buggy, though it was testified by several men who did load it that he did assist; but he also said that it was loaded two or three days previously, and that he had seen it before he moved it. In answer to a question, he said: "The buggy was loaded on Saturday, and stood there Sunday and Monday. I saw what was loaded on it." He repeated this at another stage of his examination. Both the plaintiff and his principal witness testified that the pin-holes on the buggy were worn, and Klau said they were so much worn that they would not hold the pins intended for them.

The absence of these pins, by means of which the iron on the buggy was held in place, constituted the sole basis of liability upon which the case was founded. It was established beyond all question that the buggy was loaded by fellow-workmen of the plaintiff, even if he did not assist; and, of course, the master was not responsible for the negligence of the fellow-workmen resulting in the plaintiff's injury. As it was an undisputed fact that the pins were not in the buggy, the failure to put them in was the negligence of the fellow-workmen, unless the holes were so much worn that the pins could not be placed there. But, in any event, the workmen who loaded the buggy, and the plaintiff who assisted in working it, were bound to know that the pins were absent; and, if the absence of the pins was the cause of the accident, they were all chargeable with knowledge of the cause before the accident occurred. These pins were iron rods about an inch in diameter and twelve to eighteen inches in length, and they projected upwards from the top surface of the buggy. They necessarily formed so conspicuous a part of the appliance used for the movement of the iron, and their purpose of holding the load in place is so essential to the plaintiff's right of action,

that the omission to notice their absence was in itself negligence on the part of workmen loading or moving the buggy. The plaintiff makes his own want of care in this respect perfectly manifest. He was asked:

" Q. State whether you had ever actually helped to load the buggies? A. Yes, sir; I was obliged to assist with my colleague. Q. State whether you put the pins in the load when you loaded them. A. No, sir; it was my colleague's duty to do that. . . . . Q. State whether they put pins in when they were loading those. A. They put them in, and they took them out again. Q. State whether they always put them in. A. Not I. Q. Did your colleagues? A. Yes, sir. Q. State whether they sometimes did not use them, and sometimes did. A. They were always used. Q. Do you say there never was a case where they loaded up the buggy without the pins being used? A. We always put pins in. Some were broken off. Q. State why, if you noticed that, you failed to notice that there were no pins in on this day. A. I didn't know it. Q. How was it that you noticed every other time that they used pins, and you did not think to notice this day that they did not use them? A. I didn't care to notice, because that buggy was already loaded for two days. Q. But you were pushing the buggy? A. Yes, sir; we had to push them in order to put them on the transfer. Q. And you saw the load and the pieces making up that load? A. Yes, sir. Q. How could you help seeing that there were no pins in it? A. I didn't see any; therefore I can't say whether there was any. I don't know whether it was broken or not."

Under this testimony, it matters nothing whether the plaintiff saw and knew of the defect in the buggy, and nevertheless used it, or whether he did not see what it was his plain duty to see. His employer was not there to know of the defect, and no officer or agent of the defendant having control was present, or is shown to have had any knowledge of the defect complained of. It is not pretended, and certainly it is not proved, that the plaintiff, or any one else, gave notice to the defendant, or to any of his agents in charge, of the existence of any defect in the buggy. The defect, if it was as alleged by the plaintiff, was the result of constant wearing away of the holes in the buggy, of which all the workmen, including the

Opinion of the Court.

plaintiff, who were using the buggies, constantly had knowledge or the means of knowledge, and there is no proof that the defendant had knowledge; and in such circumstances, under all the authorities, the workmen assume the risks, and the master is not liable.

But, beside all this, the defendant did have in his employ at the works a person whose duty it was at all times to keep the buggies in repair. His name was Andrew Hopshell, and he testified on the trial. He said he was a machinist; that he had charge of repairing machinery in the workshop, and had been working there for twelve years; that whenever he discovered any machinery out of order, or was informed by any of the workmen to that effect, he always had the necessary repairs made at once, and that he had particular charge of the buggies, and repaired them whenever they were out of order.

In Pittsb. etc. R. Co. v. Sentmeyer, 92 Pa. 276, we held that where an employer has furnished his employees with tools and appliances, which, though not the best possible to be obtained, may by ordinary care be used without danger, he has discharged his duty, and is not responsible for accidents. This doctrine is precisely applicable to this case. There was no complaint against the buggy that was used, except the absence of the pins. If they were absent, because the plaintiff or his fellow-workmen failed to put them in, of course it was the result of their own negligence. It being their duty to put them in, they must necessarily know whether they could or could not put them in the holes; and, if they used the machine without the pins, they were, by necessary consequence, guilty of negligence, whether the holes were too large or not. By the exercise of the most ordinary care, they could have avoided any danger from such a source. The learned court correctly charged the jury that, "if the defect complained of was visible, it was the duty of the plaintiff and those working with him, to know that it existed and know the danger which was incident to that defect." This is in exact accordance with the authorities, and should have been followed by a direction to render a verdict for the defendant, as this court has declared should be done in repeated instances.

Thus in Sykes v. Packer, 99 Pa. 465, we said: "The defendant had as good an opportunity of seeing the condition of the tackle

as any other employee had.  He must be held to have known what was clearly visible to his sight.  It was not necessary that he should be specifically informed of a fact so patent to him." In Brossman v. Railroad Co., 113 Pa. 498, Mr. Justice TRUN-KEY, in delivering the opinion of this court, said: "When an employee after having the opportunity of becoming acquainted with the risks of his situation, accepts them, he cannot complain if subsequently injured by such exposure.  By contracting for the performance of hazardous duties, he assumes such risks as are incident to their discharge from causes open and obvious, the dangerous character of which causes he has had opportunity to ascertain: Wharton on Neg. § 214.  This is the general rule.  In Ballou v. Railway Co. 5 Am & Eng. R. Cas. 480, the deceased was killed by reason of a defect in the ladder of a freight-car, and it was held that his representative could not recover.  A well-prepared note reviewing the cases on the subject, upon the point which touches the case in hand, page 506, states the doctrine as follows: 'It seems clear, if a person in the employment of a railroad company discovers that the appliances with which he is working are or have become through use unsafe, and continues, without any special order of the company and without making any complaint, to use the said appliances, that he will be held to have either run the risk of being injured, or to have been guilty of contributory negligence, and hence, in case of injury to him occasioned by such defect, the company will not be liable; and this is true, even though the defect be such a one as under ordinary circumstances the company would be bound to repair.'"

We affirmed the court below in the foregoing case in giving a binding instruction to the jury in favor of the defendant, although the danger arose from a bridge over the railroad being too low to permit a man to stand erect on the top of the car, and although the accident occurred on a dark and rainy night, when the approach towards the bridge of the train upon which the deceased was riding would not disclose the bridge, simply because the deceased had the means of knowing the danger, but failed to use them.  In the present case, however, the plaintiff could not fail to see the absence of the pins; but, according to the best aspect of his own testimony, he simply failed to use his eyes in discovering the defect.  He says he

did not notice the pins; he did not see any, though he says the pins were always used; he did not use his opportunity, though their absence as a support to the load, being so unusual an occurrence, ought certainly to have attracted his attention. Surely the defendant, who was not present either in person or by any agent or officer, could not be expected to know the condition of the load, and could not be required to take precautions against the negligent loading and use of the buggy by his workmen.

The case of Phila. etc. R. Co. v. Huber, 128 Pa. 63, has no analogy to this. There the deceased was not shown to have had any previous knowledge of the brake which caused his death. He had no opportunity to know of the defect which caused it to slip, and he could only discover it in the act of using it; but the moment he used it, it gave way and threw him on the track. In the present case, if it be conceded that the plaintiff had a right to assume that the buggy was not defective, the absence of the pins, which was the real cause of the iron falling off, was such a manifest and conspicuous fact that he was bound to notice it, and his failing to notice it was due entirely to his own want of care. But, in any aspect of the case, the negligence which resulted in the absence of the pins was the negligence of the plaintiff's fellow-workmen, and for that the master is not responsible.

The assignment of error is sustained.

Judgment reversed.