The Atchison, Topeka & Santa Fe Railroad Company v. Lucius Winston, as *Administrator of the Estate of Sivvie Ayres, widow of Albert Alvin Ayres, deceased.*

### No. 8093.

1. Railroad Company—*Action for Personal Injuries—Erroneous Instruction.* A recovery was sought for an injury alleged to have been caused by the negligence of the defendant. Although there was no testimony tending to show that the injury was wilfully or wantonly inflicted, or that the defendant was guilty of gross negligence, the court instructed the jury as to the liability of the defendant in case they found that the injury was the result of the gross negligence of the defendant. *Held,* Under the facts of the case, to be misleading and erroneous.

2. ——— *When Liable; When not.* A railroad company is not an insurer of the safety of its employees, but is liable for injuries resulting to an employee from its failure to exercise reasonable and ordinary care toward him, unless he has been guilty of contributory negligence upon his part.

*Error from Osage District Court.*

ACTION by Lucius Winston, as administrator of the estate of Sivvie Ayres, widow of Albert Alvin Ayres, deceased, against The Atchison, Topeka & Santa Fe Railroad Company, to recover damages for death by wrongful act. Judgment was rendered for plaintiff, and defendant brings the case to this court. The opinion was filed February 8, 1896.

*A. A. Hurd,* and *C. N. Sterry,* for plaintiff in error.
*Waters & Waters,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J. : On April 6, 1891, Albert A. Ayres was engaged as a switchman in the yards of the Atchison, Topeka & Santa Fe Railroad Company at Nickerson, Kan., and had been acting in that capacity for about three months prior to that time. Two crews of men were engaged in the yards, each consisting of three men, viz., a yardmaster and two switchmen. Ayres belonged to the night crew, of which Frank Low was yardmaster; Logan Lawson pulled the pins between the cars and between the engine and the cars, while Ayres generally caught cars which were cut off from others, and moved to different parts of the yards, but occasionally he was required to uncouple cars and to pull pins. On the night of April 6, 1891, which was dark and windy, the crew were engaged in making up a train, and it became necessary to set 18 cars which were upon one track over upon another. The switch-engine was backed down to connect with them, and Lawson, whose duty it was to pull pins and direct the movements of the engine, stood on the running-hoard attached to the tender. That end of

the engine was attached to what is called a "Mexican" car, which had a pin in the drawhead that could not be taken entirely out. There was a slot in the pin, through which a rivet passed, and the pin was so made that when it was drawn up as far as the rivet would permit it to go, the head of it dropped back, and the slot would catch in the drawbar and hold the pin in position. Quite a number of cars with such couplings were used on that railroad system, but the pins so placed would not always stay up. Occasionally, when passing over a switch or anything which would cause a jolt, they would fall back again. The cars were pulled out from one track and were being backed in upon another at a rate of from three to five miles an hour, and Low and Ayres had climbed upon the other end of the train with a view of setting the brakes and stopping the cars when they reached a certain point. When they had proceeded a short distance, and it was desired to cut the engine off, Lawson, standing on the footboard of the tender, with his lantern in one hand, pulled the pin of the Mexican car, and set it back, and at once turned to catch the handhold of the tender with one hand, and signal the engineer with his lantern with the other to stop the engine. Upon this signal, the engineer stopped the engine, but the pin had fallen back, and recoupled the engine to the Mexican car, which caused a jerk throughout the entire train of 18 cars. Just before this occurred, Ayres had climbed upon the train and was over near the end of the eighteenth car, while Low had climbed on the seventeenth car, but had not reached the top. When Low felt the jerk, he looked back and saw Ayres's lantern falling, but he was unable to see whether Ayres had fallen, or what had become of him. Low at once set the

brakes and stopped the cars, and, after a search, Ayres was found in the middle of the track, with one foot cut off, and his body badly bruised. In a short time he died, and his widow brought this action to recover for the loss suffered by his death. The jury found in her favor, and awarded damages in the sum of $7,987.

The sufficiency of the evidence is attacked, and while it is weak and unsatisfactory in some respects, the court is of opinion that it was sufficient to take the case to the jury. Whatever may be said of the testimony as to the negligence of the company, it is certain that there was none offered tending to show a wanton and wilful injury, nor anything which approached gross negligence. The court, however, in its charge, and over the objection of the company, stated at length the definition of gross negligence, and instructed that if the jury believed the injury and death of Ayres was caused by the gross negligence of the railroad company, they should find for the plaintiff, unless the deceased was guilty of contributory negligence. In view of the testimony this instruction was misleading and erroneous. The casualty is attributed to want of care on the part of Lawson, the pin puller, but we fail to find anything which warranted the giving of these instructions. It is conceded that the falling of the pin, which caused the jerk, was accidental. Pins fastened as this one was occasionally fall when the car is jolted, and the one upon this car had fallen once before on the same night. Lawson pulled and set the pin as the car approached the switch, and probably the jolt resulting from passing over the switch caused the pin to fall. While Lawson knew that Ayres was on the other end of the train, he could not see him when he was upon

the footboard, uncoupling the engine from the cars, and there is nothing to show that Lawson believed that Ayres was in danger. Jerks of the kind which probably caused the fall of Ayres are not uncommon in the yard, and Lawson states that he had no idea that the jerk was sufficient to throw a man from the train. More than that, the jury found that, in pulling the pin and signaling the engineer, Lawson acted in the usual and ordinary way of doing such things in that yard. It is further found that Low, the other switchman, did not know that Ayres was thrown from the car until he had climbed on the top and looked over the sides and end; and, further, that after the jerk he could not have done anything to prevent the casualty. Under this state of facts, an instruction directing the attention of the jury to the rule which obtains where the negligence is malicious or wilfully and wantonly reckless was prejudicial error. ( *K. P. Rly. Co. v. Peavey*, 29 Kan. 169; *C. K. & W. Rld. Co. v. O'Connell*, 46 id. 581; *A. T. & S. F. Rld. Co. v. Wells*, ante, p. 222, 42 Pac. Rep. 699.)

Some of the instructions appear to have been given upon the theory that there was testimony that Lawson believed, or had reason to believe, that the deceased had been jerked from the train and was liable to be run over, and the jury were therefore advised that, unless he then used all the means within his power to prevent injury to Ayres, he was guilty of culpable negligence. In one of them it is said that in such case it was Lawson's duty, "if in his power, to take such precautionary measures as would insure the safety of the deceased, and if he failed to do so, and the deceased was not at fault, the defendant would be liable for the injuries thus occasioned." Nothing in the testimony tends to show that Lawson

knew or had reason to apprehend that Ayres had been jerked from the train ; and, in any event, the railroad company is not required to insure the safety of its employees, and can only be held liable for the failure to exercise ordinary care.

The twenty-third, twenty-fourth and twenty-fifth instructions are objectionable in this respect, and should not have been given.

For the errors mentioned the judgment will be reversed, and the cause remanded for another trial.

All the Justices concurring.