THE CHICAGO, KANSAS & NEBRASKA RAILWAY COMPANY v. ALBERT PARKINSON.

No. 8251.

1. RAILROAD COMPANY —*Action for Injuries—Erroneous Instruction.* The plaintiff, a boy about 15 years old, when delivering railroad mail at the request of the station-agent to the baggagemaster on a car, being rudely cursed by the baggageman, became confused and stepped in front of an approaching engine on another track close by, and was injured. *Held,* That an instruction to the effect that these facts alone would render the railroad company by whom the baggage-master was employed liable for the injury, without reference to the question whether the baggagemaster might reasonably have apprehended that such injury would result, was erroneous.

2. —————— *Liability for Acts of Employees—Erroneous Instruction.* The plaintiff, who was on his way to deposit letters in a railway post-office on a train going eastward, which was then approaching on one track, was called back by the station agent and requested to deliver railroad letters to the baggage-master on the same train at a time when a west-bound train was also approaching on a track which the plaintiff was required to cross in order to reach the postal car. He was injured while returning from his errand by the engine of the west-bound train. *Held,* That under these facts it was error to instruct the jury that it was the duty

of the station-agent to protect the plaintiff from such dangers as might reasonably be expected at the time, and that if he failed to do so, the company employing him was liable for the injury.

3. TESTIMONY—*Directing Judgment.* The testimony in the case *held* not such as to require this court to direct judgment in favor of the defendant.

*Error from Wabaunsee District Court.*

THIS action was brought by Albert Parkinson, a boy about 15 years old, against the Chicago, Kansas & Nebraska Railway Company and the St. Joseph & Iowa Railroad Company to recover damages for injuries received by him at the Sugar Works station, in Shawnee county, on the 22d of April, 1889. It appears from the evidence that the plaintiff and one H. G. Licht went to the station together at about the time of the arrival of two passenger-trains, one going east and the other west. The station is situated on the south side of the railroad, near the main line. About 10 feet north of the main track there is a side-track. Licht handed the plaintiff some mail to put on the east-bound train, which came in first, on the north track. As the plaintiff started to go across the main track, Collins, the agent in charge of the station, called him back and gave him some railroad mail to be handed to the baggageman on the same train. After receiving this mail from Collins, the plaintiff went across the main track. The east-bound train was then pulling in on the side-track. He waited until the mail-car came along, and being small, and there being a sunken place between the two tracks, he had difficulty in handing mail up to the car, and when he handed the railroad letters to the baggageman who was in the baggage-car, he states that the baggageman cursed him for not getting the mail to him right; that this caused him to

be excited, and he turned and started back to the depot. As he stepped on the main track, Collins hallooed to him to look out. He turned east just as the engine of the west-bound train struck him on the knee, throwing him down. In some manner his left hand was thrown on the track and so crushed that it became necessary to amputate the arm below the elbow. The negligence charged in the petition as ground for the plaintiff's recovery is that the defendant's servants in charge of the west-bound train failed to ring the bell, sound the whistle, or give any warning of the approach of that train; that Collins, the agent, was negligent in calling the plaintiff back to the station platform, and then sending him across the main track with letters to mail, a place of danger, and which was known to be dangerous to him; and that the baggageman was guilty of misconduct in using profane language to a boy under such circumstances. At the conclusion of the plaintiff's evidence, demurrers were filed on behalf of the defendant companies separately. That of the Chicago, Kansas & Nebraska Railway Company was overruled, but the demurrer of the St. Joseph & Iowa company was sustained. After the conclusion of the testimony, instructions were given to the jury, among which are the following:

"6. If you find from the evidence that the defendant was guilty of negligence as charged in the petition, which was the proximate cause of the injury, and that the plaintiff was injured thereby, and that the plaintiff was himself guilty of some slight degree of negligence this would not alone prevent a recovery, provided the jury further believe from the evidence that the act of the defendant which caused the injury was done by the defendant after discovering the plaintiff's negligence, and the defendant could have avoided the injury by the exercise of reasonable care."

"10. If you believe that Albert Parkinson, on the arrival of the east-bound train, was proceeding to deposit mail matter on the postal car of'that train ; that he was intercepted by the station-agent, and requested to take to such car letters concerning railroad business, and that he proceeded to the postal car and deposited such mail matter, and that as he was departing he was accosted in an angry manner by the baggage-master, and that by reason of being so addressed he became confused, excited, lost his wits, or became dazed, so that his attention was taken off the coming train, and that by reason of the conduct of such baggageman he was, by his being disconcerted, injured, then I instruct you, that if the baggageman was an employee of the defendant, The Chicago, Kansas & Nebraska Railroad Company, the plaintiff ought to recover against said Chicago, Kansas & Nebraska Railroad Company, if you find that said company was, at the time of the injury, operating said road or participating in so doing.

"11. If the jury believe from the evidence that the station-agent induced Albert Parkinson to carry his mail to the postal car, it was the duty of such station-agent to guard Albert Parkinson from all dangers he had reasonable apprehension and knowledge to expect. at the time and place, and any neglect on his part to so guard him was negligence on his part and of the company in whose employ he was, and which was engaged in operating such railway at the time, or participating therein.

"12. I instruct you, if you believe that the station-agent invited Albert Parkinson to take some railroad mail and give it to the baggageman, and that Parkinson did so, and that the said station-agent knew of the arrival of the east-bound train, that the westbound train was approaching, and that they would meet and pass at that station, and knew of the nearness of the two tracks to each other, then I instruct you that it was the duty of such station-agent to protect Albert Parkinson from such dangers as might reasonably be expected at the time, and that, if he

failed to look out and care for his safety, or by any negligent act of his induced the injury of Albert Parkinson, and the said Parkinson was then acting as an ordinary prudent person would do, then, in such case, the defendant or defendants in whose employ the said station-agent then was are liable to him for such injury."

The jury rendered a general verdict in favor of the plaintiff for $6,500. Two special questions were submitted at the request of the plaintiff, but none were asked by the defendant. A motion for a new trial was overruled, and the defendant brings the case here. The opinion herein was filed April 11, 1896. .

*M. A. Low*, and *W. F. Evans*, for plaintiff in error.

*W. A. Deford*, and *J. W. Deford*, for defendant in error.

The opinion of the court was delivered by

ALLEN, J.: It is strenuously urged by counsel for the plaintiff in error that the court erred in refusing to instruct the jury to find for the defendant, and that there can be no recovery under the facts disclosed by the testimony in this case. The main objections urged are, that the evidence clearly disclosed the fact that the railroad on which the plaintiff was injured was not operated by the defendant company at the time of the injury, but was, in fact, operated by the Chicago, Rock Island & Pacific Railway Company; and that the injury to the plaintiff was due solely to his own negligence. As to the first of these claims, it must be conceded that the evidence tending to show that the railroad was operated by the defendant company was very slight, and that there was a great deal of testimony to the effect that the Chicago, Rock Island & Pacific took possession of and operated the

road on or about the 1st of April, 1889, and the plaintiff's injury appears to have been received on the 22d of that month.   Whatever weight we might be willing to give to it if the matter were submitted to us as a question of fact, we yet think there was some slight evidence tending to support the finding of the jury in that particular.   Nor can we declare, as a matter of law, that the plaintiff's injury was due to his own culpable negligence.   It is true that a boy of ordinary intelligence, nearly 15 years old, cannot be excused from using such care and prudence as a boy of that age would ordinarily exercise in order to avoid danger.   Courts will not presume boys of that age to be incapable of providing for their own safety. But in this case it appears from the testimony that the baggageman to whom he delivered the railroad mail was grossly abusive, and that the violent and profane language the baggageman used caused him to lose for the instant his presence of mind, and that while he was confused he stepped into the place of danger where he received his injury.   It was for the jury to say, under this testimony and all the other evidence in the case, whether an unwarranted act of the baggageman did excuse the plaintiff's want of care in stepping in front of the approaching train, by depriving him for the time being of his capacity to act with ordinary prudence.   This judgment, however, must be reversed and a new trial ordered because of very serious errors in the instructions given by the court.   The sixth instruction is to the effect that, if the injury was caused by the negligence of the defendant, and the plaintiff was also guilty of some slight degree of negligence, this would not alone prevent a recovery, provided the jury further believe that the act of the defendant which caused the injury

42—56 KAS.

was done after discovering the plaintiff's negligence, and the defendant could have avoided the injury by the exercise of reasonable care. The engineer in charge of the engine which caused the injury testified that the first he saw of the boy was when he made the first step, and was about to make the second step when the engine struck him; that, in approaching the station, he applied the air, and seeing that he was going to stop too quick, he released the air and put his head out of the window to recognize the other train, according to the rule on the road, and that by the time he took his head in again he saw the boy, and when he stopped the boy was at the hind end of the tender.

It is claimed that it was the duty of the engineer, when going into a station, to look out for the safety of persons who had a right to be on and about the tracks, and to be constantly on the alert to avoid injury to them, and that by turning his attention to the other train the engineer neglected the duty he owed the plaintiff to look out for his safety. The only negligence charged against the engineer in the petition is in failing to ring the bell, sound the whistle, or give any other signal of the approach of the train. This instruction would authorize a recovery if the jury believed that the plaintiff negligently stepped in front of the approaching train, but that, after he had done so, the engineer might, by the exercise of reasonable diligence, have avoided injury to him. If negligence in this respect was relied on, it ought to have been charged in the petition.

The objections to the tenth, eleventh and twelfth instructions are still more serious. The tenth instruction is in effect that if the baggage-master, by accosting the plaintiff in an angry manner, caused

him to be confused, so that his attention was taken off the coming train, and by reason of his being disconcerted he was injured, the company is liable for the injury. This instruction wholly excludes the consideration of any question of negligence, and directs the jury to find against the defendant if the baggageman, by his language, did in fact confuse the plaintiff, and if his being so confused in fact caused his injury. It is exceedingly difficult to see how a recovery can be based solely on the conduct of the baggage-master. While it is, of course, reprehensible for him to have cursed a boy of the age of the plaintiff, it does not necessarily follow that he might have reasonably anticipated that by so doing the boy would altogether lose his self-control and step in front of the approaching train. The conduct and language of the baggage-master might properly be proven for the purpose of relieving the plaintiff from the charge of contributory negligence, but it would not render the company liable for the injury unless such conduct might reasonably be expected to cause the plaintiff to act as he did, and thereby to induce the injury. It is only where the act of a servant might reasonably be expected to produce the injury that in fact results that the master can be held to answer in damages.

The eleventh and twelfth instructions declare it to have been the duty of the station-agent, Collins, after delivering the mail to the plaintiff to be carried to the car, to protect him from all dangers that might be reasonably apprehended, and that the company was liable for any failure to so protect him. By these instructions the liability was imposed on the defendant, not for negligently sending the plaintiff into a place of danger, but for failing to protect him from the dangers which surrounded him. If it were conceded that

the plaintiff went into a place of danger where he had no right, and that liability was incurred by the defendant by reason of the act of its agent in sending him there, the measure of the defendant's liability, as declared by the instructions, would be an extreme one, substantially the same as that disapproved by this court in the case of *A. T. & S. F. Rld. Co. v. Winston*, ante, p. 456, 43 Pac. Rep. 777. But the plaintiff does not claim that he was a trespasser, nor that he went to the place of danger solely because of the direction given him by the agent, Collins. His own testimony shows that he had started to mail letters given him by Licht; and it is claimed by counsel here, and we think justly so, that he had a right to go to the car in which the railway post-office was kept for the purpose of mailing the letters intrusted to him ; that he was not a trespasser ; and that, though in a place of some danger, it was a place where, by the exercise of reasonable prudence on his part and of proper care on the part of those in charge of the trains, he might do his errand and return in safety. It is difficult to perceive how the act of the agent, Collins, in calling him back to give him other letters to mail radically changed his situation, and certainly it did not render the company an insurer of his safety. It is very difficult to see how Collins could have protected the boy against the rude language of the baggage-master, or how he could have caused the engineer of the west-bound train to ring the bell, sound the whistle, or keep a close watch in front of his engine. None of the agencies which produced the plaintiff's injury were under the control of Collins, nor is it pointed out how it would have been possible for him to have protected the plaintiff. His negligence, if negligence it was, was in halting the boy while performing the mission he had first undertaken,

and in imposing on him the further task of delivering railroad letters to the baggage-master. Whether in doing this he failed to act as a person of ordinary prudence would have acted under like circumstances was a question which might have been submitted to the jury; but no liability could be imposed on the defendant company by reason of his doing so, unless his acts were the direct and proximate cause of the plaintiff's injury, and only this question, so far as imposing liability on the defendant company because of the acts of the agent, Collins, could properly be submitted to the jury.

Various other criticisms are made on the instructions. We think it might have been well for the court to have explained to the jury just what negligence was imputed to the defendant, but we find nothing in the other criticisms requiring special mention.

The judgment is reversed, and a new trial ordered.

All the Justices concurring.