THE SOUTHERN KANSAS RAILWAY COMPANY v. O. P. MICHAELS.

1. INJURY TO EMPLOYÉ — *Question* — *Erroneous Ruling*. In an action by M., a head brakeman, against a railway company, for injuries alleged to have been sustained on account of a switch stand and the target thereof being too close to the railroad track, the plaintiff testified that he had no actual knowledge how close the switch target was to the track, prior to his injuries. Upon cross-examination he was asked: "After you were injured, did n't you say to persons that you had repeatedly called the attention of parties to that target?" This question was objected to by his counsel, and the court sustained the objection. *Held*, Error.

2. INCONSISTENT FINDINGS — *New Trial*. Where some of the material findings of the jury are against the evidence, and others are unsatisfactory, and it appears thereby that the findings have been given under the influence of passion or prejudice, or, at least, that the jury have not intelligently or fairly considered the evidence, *held*, that a new trial must be granted so that the facts may be submitted to another jury.

3. ———— *Arguments of Counsel*. Where the trial court, before the argument to the jury commences in the case, informs the attorneys of the parties that each side will be given an hour and a quarter for argument, and the attorney of the plaintiff announces that he will consume 30 minutes only in opening, and requests the court to notify him when 30 minutes have expired, and the court acts upon his suggestion, and thereupon the attorney for the defendant, after the attorney for the plaintiff has closed his opening, announces that he will waive all argument upon his part in the case, and the court, upon application, refuses the attorney for the plaintiff further time to renew his argument, *held*, that the waiver by the attorney for the defendant of any argument, under the circumstances. is not misconduct on his part, and the court does not commit error in refusing, in its discretion, further time for the attorney for the plaintiff to argue his case.

*Error from Sumner District Court.*

ACTION to recover damages for personal injuries. Judgment for plaintiff, *Michaels*, at the November term, 1888. The defendant *Railway Company* brings the case here. The material facts appear in the opinion.

*Geo. R. Peck, A. A. Hurd, Robert Dunlap,* and *O. J. Wood,* for plaintiff in error:

1. The railroad company was not negligent in placing the switch stand where it did, and its position being obvious to the plaintiff, he assumed the risk of danger incident thereto. The tracks in a yard where switching is to be done must necessarily be close together. The manner of placing these tracks and the position of switches is a matter which must be left to the discretion and determination of the railroad company. As to one of its employés, it owes no duty to place its switch, switch stand or track in any particular position or at any particular point. The employé who engages to work in such a yard must take notice of the position of the tracks and of the switches about which he is to work, and must govern himself accordingly. If there is any danger incident to the use of these appliances, it is a danger and a risk which he assumes. See *Tuttle v. D. G. H. & M. Rly. Co.,* 122 U. S. 189. See, also, *Randall v. B. & O. Rld. Co.,* 109 U. S. 478; *Twitchell v. G. T. Rly. Co.,* 39 Fed. Rep. 419; *Lovejoy v. B. & L. Rld. Corp.,* 125 Mass. 79; *Smith v. W. & St. P. Rld. Co.,* 41 Am. & Eng. Rld. Cases, 289; *Perigo v. C. R. I. & P. Rly. Co.,* 52 Iowa, 11; *Wells v. Railroad Co.,* 56 id. 520; *Mayes v. Railroad Co.,* 63 id. 562–568; *McKee v. Railroad Co.,* 50 N. W. Rep. 209; *Williams v. D. L. & W. Rld. Co.,* 41 Am. & Eng. Rld. Cases, 254; *Lathrop v. Fitchburg Rld. Co.,* 41 id. 327; *Doyle v. St. P. M. & M. Rld. Co.,* 41 id. 376; *Kelley v. Railroad Co.,* 11 Atl. Rep. 659; *Ryan v. Railroad Co.,* 26 Am. & Eng. Rld. Cases, 344; *Railroad Co v. Austin,* 40 Mich. 247; Wood, Mas. & S., § 382; *Goulin v. Bridge Co.,* 64 Mich. 190, 194, 195; *Batterson v. C. & G. T. Rld. Co.,* 53 id. 125; *M. C. Rly. Co. v. Smithson,* 45 id. 212; *Johnson v. Water Co.,* 45 N. W. Rep. 807; *Vincennes Water-works v. White,* 24 N. E. Rep. 747; *Boyle v. N. Y. & N. E. Rld. Co.,* 23 id. 827; *Norf. & West. Rld. Co. v. Jackson,* 8 S. E. Rep. 370, 371, 372, 373; *Brice v. L. & N. Rld. Co.,* 38 Am. & Eng. Rld. Cases, 38; *Carbine v. Ben. & Rut. Rld. Co.,* 38 id. 45; *G. C. & S. F. Rld.*

*Co. v. Williams,* 39 id. 292; *Chicago &c. Rld. Co. v. Clark,* 15 id. 261.

In the case of *McQueen v. C. B. U. P. Rld. Co.,* 30 Kas. 691, this court held that McQueen, having had full opportunity to know of the condition of the wheels which were claimed to be defective, had assumed the risk, if any, and could not recover.

2. The court erred in refusing to permit the defendant to ask the plaintiff whether he did not call the attention of parties to the switch target in question.

3. There was error in giving and refusing to give certain instructions.

4. The court erred in failing to instruct the jury as to the elements of damage or the measure of damages. *Knight v. Egerton,* 7 Exch. 407; *B. & O. Rld. Co. v. Carr,* 17 Atl. Rep. 1052, 1054; *McGowen v. St. Louis Ore & Steel Co.,* 16 S. W. Rep. 236, 239; *Pa. Rld. Co v. Zebe,* 33 Pa. St. 318, 327; *Hadley v Baxendale,* 9 Exch. 354.

5. The court erred in refusing to submit certain special questions to the jury, as requested by the defendant.

6. Certain findings of the jury are false, and show that the jury were either actuated by prejudice, or were too ignorant to try the case.

*Halsell & Roy,* for defendant in error:

1. In its first argument plaintiff in error ignores many Kansas authorities which are directly against it, and cites other cases for authority. It is very significant of a failing cause to see plaintiff in error desert its own court and, out of innumerable "personal injury" cases passed upon by our supreme court, cite only one Kansas case, *McQueen v. C. B. U. P. Rld. Co.,* 30 Kas. 691, and which, upon examination, proves to be not at all in point. In *St. L. Ft. S. & W. Rld. Co. v. Irwin,* 37 Kas. 701, this court passed upon every question of any consequence raised by plaintiff in error, and defendant in error respectfully invites the court's attention to that case. See, also, *Railroad Co. v. Kier,* 41 Kas. 661; *Railroad Co. v.*

*Neiswanger*, 41 id. 621; *Railway Co. v. McCally*, 41 id. 639; *Rapid Transit Rly. Co. v. Fox*, 41 id. 715; *Railroad Co. v. Morgan*, 43 id. 1; *U. P. Rly. Co. v. Fray*, 43 id. 750; *Condiff v. Railroad Co.*, 45 id. 256; *S. K. Rly. Co. v. Sanford*, 45 id. 372; *C. K. & W. Rld. Co. v. Blevins*, 46 id. 370.

In 41 Am. & Eng. Rld. Cases, 327, cited by plaintiff in error, the deceased came to his death while shackling or coupling cars, by projecting timber, and the attorney for plaintiff surrendered his case upon the following admission in the record:

The plaintiff's counsel admitted, at the request of the attorney for defendant, "that lumber and rails are frequently transported over railroads with ends projecting beyond the cars, but such is a dangerous way of loading, and that in such cases shackling must be and is made by a brakeman stooping down below the timber or rails. The deceased brakeman might have safely shackled these cars in that way." Besides this fatal admission, the proof showed that the deceased voluntarily assumed a dangerous position when a safe one was provided for him and was as convenient. In support of these, plaintiff in error cites a number of authorities, but since the leading cases are not in point, the support cannot be, and we shall not follow them further, knowing that our own authorities are conclusive.

2. Passing to the second argument of plaintiff in error, which complains of the sustaining of the objection to the following question put to Michaels on cross-examination: "Q. After you were injured, did you not say to parties that you had repeatedly called the attention of parties to that target?" This was objected to and the objection was properly sustained: 1st. It was not proper cross-examination, for the general denial did not raise any issue of contributory negligence or waiver. 2d. It was not proper cross-examination. 3d. No foundation had been laid for such a question. 4th. If Michaels had so stated and it was proper to prove it as an admission, it could have been done by other evidence, if at all,

and was therefore immaterial error. But that no such admission was made is shown by the findings, and by the fact that no evidence was produced by plaintiff in error on that point except the statement of the conductor, Flanders, whom Michaels contradicted and the jury disbelieved. Besides, the cross-examination is to be governed by the discretion of the court, and it has not been abused.

3. As to the third argument of plaintiff in error: The fourteenth instruction was as favorable to defendant below as the law is, if not more so. See *Irwin* case, 37 Kas. 712. Instructions 13 and 17, when taken in connection with the fourteenth and all the other instructions, are very favorable to the road. The objection to the eighteenth instruction is wholly untenable for the same reason above given, and, under the same authorities cited, it is correct. Indeed, the court should have gone much further, and given instructions Nos. 1 to 6, inclusive, and Nos. 9 and 10, asked by defendant in error, as they are unquestionably the law.

4. The plaintiff in error complains that the court failed to instruct the jury on the measure of damage. A very short and pertinent answer to this is, that the defendant below never asked any such instructions. Neither did it save any exception to the failure of the court to so instruct, and it is therefore estopped from making complaint. 44 Kas. 572. See, also, 36 Kas. 90; 43 id. 181, 451; 45 id. 65, 580; 46 id. 245.

5. The fifth argument seems too trivial to notice. This question should not have been submitted, because it was wholly immaterial, and because the evidence was so clear that there was only one answer to be given to either the thirteenth or fourteenth question. The uncontroverted evidence was that the defendant placed the stand in question upon the ground; it, therefore, knew better than any other person could know of the condition and situation of the switch stand and target, and the submitting of questions 13 and 14 was trifling with the court and jury. There was no necessity for findings called for in the fifty-first and fifty-second questions, for a

finding under the evidence could not have possibly affected the verdict, as there was no conflict in the evidence. Indeed, there was no evidence which would have justified a finding.

6. The attorneys for plaintiff in error have, in their sixth argument, reflected upon the jury which tried this case. In noticing this reflection, we feel compelled to call attention to the conduct of the attorney who tried the case below. We were not permitted by the court below to argue this cause to the jury. The record shows that after the case was closed the attorneys for both the plaintiff and defendant procured from the court permission to argue the cause to the jury for one hour and a quarter on a side; that an agreement was made that James A. Ray should open the case for plaintiff in 30 minutes, and the court was to notify him when his time was consumed. The 30 minutes were so occupied, and said Ray was by the court stopped. Whereupon the defendant's attorney waived his agreement, and succeeded in getting the court to prohibit the plaintiff's attorney from arguing the case further or concluding the argument begun, and thus, too, in the face of an express agreement to the contrary.

The court submitted to the jury 56 special interrogatories to be answered, but refused to allow the plaintiff's attorney to discuss either of them, or the evidence, simply because the attorney for the defendant so requested; and now, in the face of this sharp practice and misconduct, this attorney in his brief reflects upon the jury.

This court has more than once placed its seal of condemnation upon sharp practice, and we trust that this conduct may not be overlooked.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by O. P. Michaels against the Southern Kansas Railway Company on account of personal injuries received by him, which he claimed were caused by the negligence of the company in improperly placing a switch with a target thereon too close to a track in the yards of a station known as "Longton." Michaels was

in the employ of the company in 1885 and 1886, but quit work some time in 1886. He was reëmployed February 11, 1887, as head brakeman on a local freight train running between Cherry Vale and Wellington. On April 7, 1887, while on a ladder on the side of a freight car passing the switch stand at the west end of the yards at Longton, he was struck in the back by the target, knocked off, and injured. As head brakeman, it was his duty to ride on the head of the train. When the train came to switches he was to pull pins, turn switches, cut out cars, etc. During the time that he acted as head brakeman upon the freight train between Cherry Vale and Wellington — about two months — he passed over the yards at Longton nearly every day; at least every other day. In these yards a gread deal of switching had to be done. The switch in question was No. 1, ånd connected the house track, or track No. 4, with the new main line. The house track was used more than any other track in this yard, and as this switch threw that track, it would have to be frequently used.

Michaels testified that after the injury he measured the distance, and found that the center of the switch stand was 4 feet 3 inches from the near rail of track No. 4, and it stood half-way between the rail of track No. 1 and track No. 2, the distance between the two tracks being 8 feet 7 inches; that it was between $6\frac{1}{2}$ and 7 feet in height, and at the top had upon it an arrow head which projected 17 inches beyond the staff or rod, the arrow head being used to indicate the direction in which the switch was turned; that a car would project from 20 to 25 inches from the track, leaving a distance of from 10 to 15 inches between the end of the switch target and the side of a car. The switch stand and target were in the same condition on the 7th of April, at the time Michaels was injured, as when he reëntered the employment of the company, on the 11th of February, 1887. When he was injured, Michaels was facing east, and his train was going west; therefore he had his back toward switch stand No. 1, the target of which knocked him off. He was giving directions to a brakeman with reference to switch No. 5, toward the north, on track No.

4, trying to inform him it would have to be adjusted, and while shouting to the rear brakeman, Wartenbee, and as he was passing switch stand No. 1, he was struck. The conductor testified that the distance between the target and a car was about 18 inches, and this conductor and the rear brakeman testified that they both passed in safety while riding upon the side of a car between the car and the switch target, and that the plaintiff was hanging out from the car when injured.

Upon the trial Michaels testified in his own behalf, among other things —

" That two or three days before he got hurt, he heard it stated that there was a switch stand at Longton too close to the track; that it would kill or cripple some one; that at the time of his injury he was upon the head end of the car; that after the pin was pulled, a car was put on the north or house track, called No. 4; that he turned the switch to get onto that track, and that the switch he turned was No. 1."

Upon cross-examination he was asked : "After you were injured, did n't you say to persons that you had repeatedly called the attention of parties to that target?" This question was objected to by plaintiff below, and the court sustained the objection. This was erroneous. It was important for the railway company to establish, if it could, that Michaels had waived the company's negligence — if any existed — by remaining in its service with knowledge of the exact condition of the switch stand and target. (*Rush v. Mo. Pac. Rly. Co.*, 36 Kas. 129 ; *St. L. Ft. S. & W. Rld. Co. v. Irwin*, 37 Kas. id. 701 ; *Clark v. Mo. Pac. Rly. Co.*, 48 id. 654.) It had the right to cross-examine Michaels upon this subject. If he had answered the question in the affirmative, it would have shown that he knew how close the switch and target were to the track prior to his injury. It is not a sufficient answer to this action of the court to say, that if Michaels had made such a statement it could have been shown by other evidence. The jury must pass upon the weight of evidence. If Michaels had answered affirmatively, it is probable that the jury would have believed him. If other witnesses

had testified that he had made such a statement, it by no means follows that the evidence would have been as conclusive as if Michaels had so testified.

Special questions were submitted to the jury. Among those submitted and answered were the following:

"Ques. 34. Did not the plaintiff throw this particular switch that day upon which he received his injuries, and pass by it two or three times before the accident? Ans. No."

"Q. 42. Had the defendant been notified of any defect in any switch stands and targets in the Longton yards prior to the accident? A. No."

"Q. 44. Did the plaintiff, prior to the time that he was injured, know that any switch stand and target in the Longton yards was so near any track as to be dangerous to employés in the discharge of their duty in said yard? A. No."

"Q. 47. Did the plaintiff continue to work in said yard as brakeman after he learned that there was one switch stand and target so near to the railroad as to be dangerous to employés in the discharge of their duty, the same as he had done prior to finding that out? A. No."

These findings of the jury are against the evidence of Michaels, the plaintiff below. Other findings of the jury are also unsatisfactory. The jury found the company guilty of gross and wanton carelessness, yet the petition did not allege either gross or wanton negligence. The allegations in the petition in this respect were as follows: "That the switch stand had been by the defendant carelessly, negligently, unskillfully and in an improper manner placed on the west end of the house track," and that "the injury was caused by the careless, negligent, unskillful and improper manner in which the defendant placed the switch stand so near the road-bed of the track as to strike the plaintiff." No amendment was asked or suggested to the petition. In this state the courts recognize different degrees of negligence. (*Railway v. Rollins*, 5 Kas. 167; *Hale v. Rawallie*, 8 id. 136.) Where several important findings, which are material, are returned by a jury against the unsuccessful party without any evidence to support the same, it is apparent that the findings have been given under the influence of passion or prejudice, or, at least,

that the jury have not intelligently or fully considered all the evidence. If material findings are made by the jury against the evidence, to sustain the general verdict, a fair trial has not been had. In such a case the facts should be submitted to another jury. (*Railway Co. v. Peavey*, 34 Kas. 472; *Railway Co. v. Long*, 46 id. 260; *Railway Co. v. Gorsuch*, 47 id. 583.) If material findings are unsupported by any evidence, the other findings of a jury, made upon conflicting evidence, are not entitled to that weight they would be if all the findings had some support from evidence introduced upon the trial.

In referring to the findings of the jury, the attorneys for plaintiff below accuse the opposing attorney, who appeared at the trial, of misconduct in preventing a full argument of the case. After the evidence had been submitted and the instructions given, the trial court granted the attorneys for the plaintiff below an hour and a quarter in which to argue the case to the jury, and like time for argument to the attorney of the railway company; thereupon the attorney for the company moved the court to require the attorneys for the plaintiff to consume at least one-half of their time in the opening argument. The court overruled this motion, and one of the attorneys for the plaintiff then announced he would consume 30 minutes only in his opening argument, leaving the balance of the hour and a quarter for his associate to present the closing argument. This attorney requested the court to notify him when he had spoken 30 minutes. The court followed his suggestion, and when he had closed his argument the attorney for the railway company announced that he did not desire to make any argument. The court then refused further argument in the case on the part of the plaintiff, and sent the jury out to consider of their verdict. Under these circumstances, we do not perceive any misconduct on the part of the attorney for the railway company, or any error in the court, in its discretion, in refusing to permit further argument. The attorneys of plaintiff below, under the order of the court, had an hour and a quarter in which to present the case to the

jury.   Instead of consuming a half-hour only in opening the case, they had the right to take the whole hour and a quarter; at least, in all fairness, they should have taken one-half or more of their time in fully presenting their case to the jury. It is not fair to the opposing side for a plaintiff, in the opening argument, to consume a few minutes only, and then to make the main or principal speech in closing.

It is claimed, however, that the alleged errors are not important and should not be considered by this court, because the railway company did not allege in its answer that Michaels was guilty of contributory negligence, or that he waived the company's negligence by remaining in its service, after full knowledge of the exact situation of the switch stand and target.   It appears that the plaintiff alleged in his petition, that his injuries "were caused without any negligence or fault on his part."   The railway company filed a general denial, but, before any evidence was submitted, the attorney of the railway company, in his opening address to the jury, stated, "that if the plaintiff was hurt in the manner alleged, the company would show, as a complete defense, that his injuries were caused directly by his own contributory negligence." The court tried the case, in receiving and rejecting evidence, in giving and refusing instructions, as if contributory negligence had been properly pleaded.   There is no cross-petition in error attached to the record, and, under these circumstances, the pleadings must be treated as the trial court construed them, and, if necessary, the answer will be regarded as amended.   If the court had ruled otherwise, the railway company could have amended its answer, if an amendment were necessary, upon the trial.

There are some alleged errors in the instructions, but it is not necessary for us to comment thereon, as the case must go back for a new trial. (*McQueen v. Railroad Co.*, 30 Kas. 689; *Rush v. Railway Co.*, 36 id. 129; *Railroad Co. v. Irwin*, 37 id. 701; *Clark v. Railway Co.*, 48 id. 654; *Perigo v. C. R. I. & P. Rly. Co.*, 52 Iowa, 11; *Wells v. Railroad Co.*, 56 id. 520;

*Mayes v. Railroad Co.*, 63 id. 562; *Williams v. D. L. & W. Rld. Co.*, 41 Am. & Eng. Rld. Cases, 254.)

The judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.