THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. LUCINDA WELLS.

No. 7852.

1. EMPLOYEE, *Killed— Contributory Negligence— Question for Jury.* W. was a brakeman on a freight-train in which was a flat car loaded with poles which were negligently allowed to project over the end of the car. He, with others, started with the train in the nighttime, and it appears that his attention was not drawn to the car or its condition until about the time he was injured. He uncoupled the train from the car loaded with poles with safety, but about 10 minutes later, when he entered from the other side of the train to couple it again to the car loaded with poles, his head was caught and crushed between one of the projecting poles and the car in front of it. The accident occurred about midnight, when it was raining and very dark, but the brakeman had a lighted lantern with him. *Held,* Under all the circumstances set forth in the opinion of the court, that it was for the jury to determine whether W. was guilty of such contributory negligence as would bar a recovery.

2. CASE, *Distinguished.* The case of *A. T. & S. F. Rld. Co. v. Plunkett,* 25 Kan. 188, distinguished.

3. SPECIAL FINDINGS—*New Trial.* Where the jury do not give fair and truthful answers to material special questions submitted to them, a new trial should be granted and the facts submitted to another jury.

4. ——— *Improper Instruction.* An instruction which directs the attention of the jury to the rule which obtains where the negligence is malicious and wilfully or wantonly reckless, where there is no testimony tending to show such negligence, is inapplicable and improper.

*Error from Butler District Court.*

ACTION by Lucinda Wells against The Atchison, Topeka & Santa Fe Railroad Company. Judgment for plaintiff, and defendant brings the case to this court. The opinion herein, filed December 7, 1895, states the material facts.

*A. A. Hurd,* and *Redden & Schumacher,* for plaintiff in error.

*Aikman & Brooks,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: William M. Wells was a brakeman who had been in the service of the Atchison, Topeka & Santa Fe Railroad Company for about 18 months prior to April 15, 1890, part of the time on passenger-trains, but most of the time on freight-trains. He had been at work with the conductor and crew with whom he was associated on the date named for about three months before that time. About 10 o'clock on the night of April 15, 1890, the conductor and his crew took charge of a freight-train at Emporia and started with it for Nickerson, Wells going with them and acting as rear brakeman on the train. The train consisted of about 30 empty freight-cars, a stock-car, a flat car loaded with telegraph-poles, and this was followed by the caboose. The telegraph-poles on the flat car were negligently loaded, and projected over the end of the flat car, so that one of them reached within four inches of the stock-car in front of it. The bottom of the flat car was from 3 feet and 10 inches to 4 feet above the ground, and the projecting poles were about two feet above the bottom of the car. No stop was made by the train until it reached Strong City, but there was no switching done there, nor does it appear that the attention of Wells was drawn to the car loaded with telegraph-poles. The next stop was made at Florence, where they arrived after midnight. There the train was uncoupled from the front end of the flat car by Wells, and about 10 minutes later the train was backed up toward the caboose and flat car, and Wells was directed by the conductor to make a coupling. Following the direction of the conductor, he went in, leaned over, and attempted to make the coupling, and, as he retired and raised up,

his head was caught between one of the projecting telegraph-poles and the stock-car, so that his head was crushed and his life taken. An action was brought to recover for the loss by his surviving widow, Lucinda Wells, who was the only heir at law of the deceased, and she recovered a judgment for $4,750.

It is insisted under the facts that Wells knew the flat car to which he was about to couple the train was loaded with poles, and that he knew, or must have known, of the condition of the car prior to the accident, and therefore that he was guilty of culpable negligence in attempting to couple them in that condition. It is argued that the case comes fairly within the rule of *A. T. & S. F. Rld. Co. v. Plunkett*, 25 Kan. 188, and that the demurrer to the evidence filed by the company should have been sustained. 2. Case, distinguished. The facts in the two cases respecting the knowledge or negligence of the injured persons differ in several material respects. In the Plunkett case the injury occurred in daylight, and it was admitted that he knew the condition of the weather, of the ground, and of the track, as well as any other employee of the company knew the same, and it being broad daylight and no obstruction to his vision, it was held that he must have known of the dangers which might arise from the projecting timbers. In the present case it does not appear that the attention of Wells was called to the condition of the car at Emporia, nor at any other point on the road, until they had reached the place where the accident occurred. It was a dark, rainy night, and, while Wells had a lantern with him, it could hardly be said that his attention was called to the dangerous manner in which the car was loaded. Some of the poles projected over the end of the car much

1. Employee killed—contributory negligence—question for jury.

further than others, and we cannot say, as a matter of law, from the evidence, that those which projected furthest, and with one of which his head came in contact, were within his line of vision when he looked in with a view of entering to make the coupling. It will be observed that the car containing the poles was standing still, and in the nature of things his attention would be drawn particularly to the moving train coming toward him when he attempted to make the coupling. It is true that he had previously coupled cars in other trains loaded with projecting poles, and that he had uncoupled the train from the car containing the poles only a few minutes before, but in the last instance he entered from the other side of the car. It may have been that none of the poles projected so far on that side of the car as to interfere with the making of the coupling, and for that reason he may not have seen or anticipated danger in entering from the other side. We do not desire to extend the rule of the Plunkett case, and the facts and circumstances of the present one are fairly distinguishable from that, and, therefore, we will not say, as a matter of law, that Wells was guilty of contributory negligence. It will be readily conceded that this is a border case on the facts, and hence we should look with great care at the manner in which it was tried.

Special questions were submitted to the jury, and when the answers were returned the defendant company objected to a number of them, for the reason that the jury had not fully and truly answered them, and the court upon request refused to direct the jury to make full and true answers to each of the questions submitted. The answers of the jury to the special

15—56 KAS.

questions betray a reckless disregard of the testimony and of their duty in the premises. To the question whether it was not customary for the company, during the time Wells worked for it as a brakeman, to receive cars loaded with poles projecting over the end of the car, the answer was, "We don't know"; and they also returned a like answer to a question as to whether cars loaded in that manner had not been carried in trains upon which Wells acted as a brakeman. There was positive testimony to the effect that cars so loaded had been frequently handled in the trains upon which Wells had been acting as a brakeman. In answer to another question, the jury stated that, at the time Wells uncoupled the car from the balance of the train, he could not have ascertained the true condition in which the same was loaded. From the testimony, it is clear that he could have ascertained the condition, and the jury should have so answered; but whether it amounted to contributory negligence not to have noticed the condition and avoided the injury depends as well upon other circumstances. In response to the question as to whether Wells knew at the time he uncoupled the car that it was loaded with poles, and that the same projected over the end of the car, they answered, "We don't know." Under the circumstances, the answer was neither frank nor fair. The same may be said of the following question : "Would the deceased have been injured by the projecting ends of the timber on the car or by anything else if he had taken the precaution or care to have bent his head low enough to have been below the line of said projecting timbers ?" Answer : "Probably he would." The jury found that Wells bent his head and placed himself in a stooping position to make the coupling, but, in answer to an-

*3. Special findings— new trial.*

other question, whether, if he had continued, whilst making the coupling and retiring from between the cars, in the same stooping position, he would have escaped injury, they answered, "We don't know."

"It is apparent that the findings have been given under the influence of passion or prejudice, or, at least, that the jury have not intelligently or fully considered all the evidence. If material findings are made by the jury against the evidence, to sustain the general verdict, a fair trial has not been had. In such a case the facts should be submitted to another jury." (*S. K. Rly. Co. v. Michaels*, 49 Kan. 396.)

Error is assigned on the giving and refusal of instructions. Most of those which were requested by the defendant company, and refused, were correct statements of the law, and some of them which had particular application to the facts might well have been given. The charge of the court, although very general, appears to us to have fairly covered the issues in the case, and included the principles of those refused. So much of the charge as directed the attention of the jury to the rule which obtains where the negligence is malicious and wilfully or wantonly reckless was improper. There was no testimony in the case to justify such an instruction, and al-

4. Improper instruction. though the rule stated was correct as an abstract proposition of law, still it was inapplicable and would tend to confuse and mislead the jury.

Objections were made to the reception and exclusion of testimony during the trial, but, after an examination of all the testimony in the record, we cannot say that prejudical error was committed by these rulings.

For the errors mentioned, however, the judgment

will be reversed, and the case remanded for a new trial.

All the Justices concurring.