GEORGE v. CLARK et al.

(Circuit Court of Appeals, Eighth Circuit. February 21, 1898.)

No. 971.

1. MASTER AND SERVANT—RISKS OF EMPLOYMENT.
    A risk which the master has created by doing or permitting something to be done which ought not to have been done, or by omitting some precaution which, in the exercise of ordinary care, ought to have been taken, cannot be regarded as one of the ordinary risks of any employment.

2. DEATH BY WRONGFUL ACT—CONFLICTING EVIDENCE—SUBMISSION TO JURY.
    In an action to recover damages for the death of plaintiff's intestate it appeared that he was employed by defendants as a switchman, and that, while attempting, at night, to couple certain cars, his head was crushed by one of a load of telephone poles which projected further than the others over the end of one of the cars. Held, on a review of the facts, that, as it could not be said that there was no evidence tending to show that defendants failed to exercise ordinary care, the plaintiff was entitled to have the question submitted to the jury.

3. SAME—CONTRIBUTORY NEGLIGENCE.
    The deceased had only had a brief experience as switchman, had only been close to the cars for a moment, and the night was very dark and cloudy. Held, that the question of his knowledge of the danger, or his negligence in not discovering it, should have been submitted to the jury.

In Error to the Circuit Court of the United States for the District of Utah.

James H. MacMillan (Charles C. Richards and Arthur E. Pratt, on the brief), for plaintiff in error.

P. L. Williams, for defendants in error.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

THAYER, Circuit Judge. This is a writ of error to set aside a verdict which was returned in obedience to a peremptory instruction by the trial court, and the sole question presented by the record is whether such instruction was right. The suit was brought by Mary George, the plaintiff in error, against the receivers of the Union Pacific Railway Company, the defendants in error, on account of the death of her son, Frederick J. George, who was killed in a railroad yard in the city of Salt Lake, Utah, on August 21, 1896, while he was in the employ of said receivers in the capacity of a night switchman. There was evidence before the jury which tended to establish the following facts: Shortly before the accident occurred, a freight train, which was being operated for the receivers, pulled into their railroad yard at Salt Lake City. Two coal cars in this train were loaded with large-sized telephone poles. The poles on one of these cars overlapped it from 15 to 18 inches. One of the poles in the

second tier from the bottom of the load,—being the one which caused the accident,—projected beyond the other poles from five to six inches, and perhaps further, leaving very little space between the end of the pole and any box car to which the coal car might be attached. After the train arrived, it became necessary to uncouple the two coal cars, and switch them for some distance to another track, called the "scale track," and there couple them to a box car standing on that track. With this purpose in view, the yard foreman and the deceased went to the track on which the freight train was standing, each having a lantern, it being about midnight. As the foreman uncoupled one of the coal cars from the next adjoining car, the deceased stooped down, and blocked the wheels of that car, there being a slight grade, so as to prevent the other cars in the train from moving when the coal cars were moved. Then, by direction of the foreman, the deceased walked some distance to the scale track, to couple the coal cars to a box car on that track when the former were backed in for that purpose. While he was in the act of making the coupling, he was caught between the box car and the end of the projecting pole above mentioned, and instantly killed, his head being crushed. There was a conflict of evidence as to whether one standing as the deceased did by the scale track, waiting for the coal cars to approach so that he could make the coupling, would be able to see that the poles projected beyond the end of the approaching coal car, or how far they so projected. The deceased was not warned by the foreman that the poles projected beyond the end of the coal car when he was directed to walk across to the scale track, and make the coupling, and he had no knowledge of such projection, or the extent thereof, except such as he may have gained when he stooped to block the wheels of the adjoining car when the coal cars were uncoupled, or such as he may have gained when they were backed in on the scale track. The night was very dark and cloudy. The deceased was 25 years old. He had worked on railroads for several years in the capacity of an engine wiper and fireman, and for less than a year as an engineer. He had worked for the receivers from four to six weeks prior to the accident, most of the time as a hostler's helper. He had only been employed five shifts as a switchman, up to the time when he was killed; that being the extent of his experience in that line of duty.

We think that this case should have been submitted to the jury. It is obvious that the coal cars were loaded in a manner which greatly enhanced the risks that a brakeman or switchman would ordinarily incur in coupling them to other cars; and whether the defendants below were guilty of negligence in permitting them to be thus loaded and placed in a train in such manner as would probably render it necessary to detach them from the train and couple them to other cars while they were in transit to their destination was a question for the jury; and, in the event that this issue had been submitted to the jury, and the jury had found that the defendants were guilty of a want of ordinary care in permitting cars thus loaded to be placed in one of their trains, there would be no ground for the contention, now made, that the death of the deceased was due to one of the ordinary risks of the employment. A risk which the master has

85 F.—39

created by doing or permitting something to be done which ought not to have been done, or by omitting some precaution which, in the exercise of ordinary care ought to have been taken, cannot be regarded as one of the ordinary risks of any employment. In view of the manner in which the coal cars were loaded, it cannot be successfully claimed that there was no evidence tending to show that the defendants failed to exercise ordinary care. Therefore the plaintiff was entitled to have that issue submitted to the jury. The following authorities are directly in point, and afford ample support for this conclusion: Railroad Co. v. Everett, 152 U. S. 107, 14 Sup. Ct. 474; Railroad Co. v. Wells, 56 Kan. 222, 42 Pac. 699; Corbin v. Railway Co. (Minn.) 66 N. W. 271.

It is urged, however, that the manner in which the coal cars were loaded with telephone poles extending some distance beyond the deck of the cars was either known to the deceased prior to the accident, or, in the exercise of ordinary care on his part, ought to have been known. Upon this assumption it is argued that the deceased, knowing the risk that he would incur in making the coupling to the box car, voluntarily assumed it, or that he was guilty of contributory negligence if he failed to notice how the cars were loaded, and attempted to make the coupling in ignorance of the risk that he would thereby incur. We cannot, however, assent to the view that the trial judge had the right to determine that the deceased either knew the manner in which the cars were loaded or was guilty of culpable negligence in not knowing that the poles projected beyond the deck of the car, and to what extent. The cars arrived in the yard at Salt Lake City after dark and shortly prior to the accident. The deceased had not been in close proximity to them but a brief moment while the foreman uncoupled them, and during that operation he was engaged in blocking the wheels of the adjoining car. There was a difference of opinion as to whether he could see accurately how the cars were loaded, and what danger he would incur in making the coupling as they were backed down the scale track towards the box cars. Besides, the deceased had only had a limited experience as a switchman in coupling cars, and, even if he did observe that the poles extended beyond the deck of the car, he might easily have been deceived as to the extent of such projection; and, as the night was very dark and cloudy, he was very likely ignorant of the fact that the pole which caused his death extended beyond the rest. These were circumstances for the consideration of the jury, from which they were entitled to draw such inferences as they deemed proper, and we are unable to hold, as we must if the verdict is sustained (Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679), that all reasonable men would necessarily have concluded either that the deceased knew how far the poles projected beyond the deck of the car, and voluntarily assumed the risk of injury, or that he exhibited a want of ordinary care and prudence in not discovering how far they projected. In accordance with these views, the judgment must be reversed, and the cause remanded for a new trial. It is so ordered.