Decided 25 November, 1901.

## MILLER v. INMAN.

[66 Pac. 713.]

MASTER AND SERVANT—NEGLIGENCE—SAFE PLACE TO WORK.

1. A sawmill employee was required to clear away the trimmings and sawdust between one of the saws and the wall, four or five feet distant. Over this space, and within less than four feet of the floor, a line shaft revolved at the rate of five hundred revolutions a minute, and at the end of the shaft near the wall was a projecting bolt used in splicing the shaft. In stooping under the shaft at the time in question to remove the trimmings, the employee was caught, whirled around the shaft, and killed. *Held,* that the employers were negligent in leaving the projecting bolt in such a position, as it increased the danger unnecessarily.

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.

2. A sawmill employee required to work under a revolving line shaft was caught on a projecting bolt, whirled around the shaft, and killed. The bolt was not visible when the shaft was in motion, owing to the rapidity of its revolutions, and there was no evidence that he had ever seen the shaft at rest, or knew its condition. *Held,* that no contributory negligence was shown, the employee not being required to look out for such defects.

UNSEEN ACCIDENT—CAUSE OF INJURY.

3. A sawmill employee was killed while working under a revolving line shaft. The shaft was in two pieces, joined by couplings held together by bolts and nuts. One of the bolts projected from the nut. No one saw the employee caught in the shaft, but two fellow employees saw him immediately afterwards, and testified that he was being whirled around the shaft near the coupling, and some of his clothing was found wrapped around the coupling. *Held* sufficient to show that the projecting bolt caused the injury.

From Multnomah: ALFRED F. SEARS, JR., Judge.

This is an action by Marie Miller, as administratrix of the estate of F. J. Miller, deceased, against Inman, Poulson & Company, a private corporation, to recover damages for negligence, causing the death of the said F. J. Miller. For convenience a photographic reproduction of the premises is herewith presented.

The deceased was working about and under a shaft in which there was a coupling from which projected a bolt and nut. In some way his clothing was caught on this nut, he was drawn under the shaft, against a wall just back of it, and killed. In the figure, AA represents a line shaft three feet above the floor; BB represents a coupling; C represents a pulley over which a ten-inch belt F was running; and H is the wall eighteen inches back of the shaft A. Certain blocks which had been cut by the saw were lying under the shaft and against the wall H, about the point G; and the deceased was engaged in taking out these blocks.

The plaintiff claimed that the deceased was squatting under the shaft AA, facing the saw shown in the cut, and that in throwing out the blocks from the angle made by the floor and the wall H, his right shoulder was caught by the projecting bolt shown near the letter B, whereby he was dragged under the shaft, which was running at the speed of five hundred revolutions a minute, and against the wall and killed.

The defendant claimed that the deceased was working in a loose jumper pulling out the blocks from the angle G back of the shaft, and his clothing was caught on the belt F, whereby he was thrown under the pulley and around onto the coupling BB, where his clothes were caught by the projecting screw; that it was negligence to get against the pulley which was open and in plain sight. It was also contended that if deceased was in the position claimed by plaintiff, he was there needlessly, because he had been furnished with a rake to draw out the loose blocks, and he was negligent in getting under the shaft. There was a judgment for plaintiff, from which defendant appeals.

AFFIRMED.

For appellant there was a brief over the name of *Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. John M. Gearin.*

For respondent there was a brief over the names of *Gustav Anderson* and *John Manning,* with an oral argument by *Mr. Anderson,* and *Mr. Geo. E. Chamberlain.*

MR. CHIEF JUSTICE BEAN delivered the opinion of the court.

This is an action brought by the administratrix of Frederick J. Miller's estate to recover damages for his death. For some two or three months prior to his death Miller was employed by the defendant as a common laborer in its mill. It was his duty, among other things, to clear away the trimmings and sawdust from a space between one of the saws and the wall, four or five feet distant. Over this space, three feet from the floor, a line shaft two and one half inches in diameter revolved, when the mill was in operation, at the rate of five hundred revolutions a minute. On the end of the shaft, near the wall, and about four feet from the saw, was a large pulley, twenty inches in diameter, over which ran a ten-inch belt. The shaft was in two pieces, joined about six inches from the pulley and three and one half feet from the saw by flange couplings nine inches in diameter, held together by bolts and nuts. These bolts ran parallel to the shaft, and one of them, as the evidence tended to show, extended out on the opposite side from the pulley, about one and one half to one and three quarter inches beyond the nut. Miller's work was in the space between the pulley and the saw, and it was often necessary, in removing the sawdust and trimmings, for him to stoop or reach under the revolving shaft and couplings. On the night of November 21, 1899, while he was thus engaged at work, he was caught, whirled around the shaft, and so injured that he died in a few minutes. No one saw him caught, but two of his fellow workmen, who were some distance away, saw him immediately after, and both testify that he was being whirled around the shaft near the coupling, and a part of the clothing torn from his body was wrapped around the coupling. The mill was usually stopped a few moments while changing crews in the morning and evening, and again at midnight for lunch, but there is no evidence that Miller's attention had been called to the projecting bolt, which was not visible when the shaft was in motion, or that he had any knowledge of it. The plaintiff had a verdict, and the question before us is whether there was any evidence to warrant it.

1. It is the duty of a master to exercise reasonable care, having regard to the usages, habits, and customs of the business, to provide his servant, with a reasonably safe place in which to work, and reasonably safe instrumentalities and appliances to work with, and to continue the same care to keep them in that condition. For a failure in this regard he is liable to a servant injured thereby who is himself free from contributory negligence. The servant, on the other hand, assumes for himself the ordinary and obvious dangers of the work or business ·in which he engages, but not the risk arising from the negligence of the master, unless he has or is chargeable with knowledge thereof. He has a right to assume, without inquiry or examination, except where the defects are known or. are plainly observable by him, that the master has done his duty: Bailey, Mast. & Serv. 150; *Johnston* v. *Oregon Short Line Ry. Co.* 23 Or. 94 (31 Pac. 283); *Pennsylvania Co.* v. *Witte,* 15 Ind. App. 583 (43 N. E. 319, 44 N. E. 377); *Mast* v. *Kern,* 34 Or. 247 (75 Am. St. Rep. 580, 600, note, 54 Pac. 950); *George* v. *Clark,* 29 C. C. A. 374 (85 Fed. 608); *James B. Clow & Sons* v. *Boltz,* 34 C. C. A. 550 (92 Fed. 572). It needs no argument or authority to show that the defendant was negligent in leaving the bolt in the condition indicated by the evidence. It is contended, however, that it could not reasonably have anticipated that any one would be injured thereby, and that the increased risk occasioned by the projecting bolt was open and visible, and within the knowledge of the servant. But we do not think either of these positions sound. The defendant required its employees to work near, and often under, the revolving shaft and coupling, and must be held to have known that they were liable to accidentally come in contact therewith. It was therefore bound to exercise reasonable care to see that the danger naturally incident to the service was not increased. When it so adjusted its machinery as to leave a bolt needlessly projecting one and one half or one and three quarter inches beyond the coupling on a rapidly revolving shaft at or near a place where its servants were required to work, it manifestly increased the hazard, and rendered their

employment unnecessarily dangerous. That the work might have been done without coming in contact with the belt, or that no one had ever before been injured by it, although it had been in the same condition for several years, is no justification for defendant's negligence, and no defense to this action. The question is not what might or could have been done, but whether the danger to the servant was increased by the projecting bolt.

2. In regard to the other point, there is no evidence that Miller knew of the condition of the bolt, nor was it such an open risk as to charge him with knowledge thereof. It was not visible when the shaft was in motion, owing to the rapidity of its revolutions; and there is no evidence that Miller ever saw the shaft at rest, and, if he did, it was not his duty to look for defects of that kind. He had a right to assume that the machinery was in a reasonably safe condition, and that the danger or hazard incident to his employment had not been increased by the negligent act of the defendant.

3. It is argued that there is no evidence that the projecting bolt was the proximate cause of Miller's death. True, no one saw him come in contact with it, but he was seen a moment later, being whirled around the shaft; and his clothes, which had been torn from his body, were found wrapped around the coupling. This was sufficient to authorize the jury to find that he was caught by the projecting bolt: *Woodman* v. *Metropolitan R. Co.* 149 Mass. 335 (21 N. E. 482, 4 L. R. A. 213, 14 Am. St. Rep. 427); *Philadelphia & Read. R. Co.* v. *Huber,* 128 Pa. 63 (18 Atl. 334, 5 L. R. A. 439).          AFFIRMED.