Roediger v. Railroad Co.

No. 19,393.

MARY A. ROEDIGER, as Administratrix, etc., *Appellee*, v. THE UNION PACIFIC RAILROAD COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. NEGLIGENCE — *Personal Injuries* — *Weighing Circumstantial Evidence.* Ordinarily, in civil cases, a preponderance of the evidence—the greater convincing weight—controls whether the evidence be direct or circumstantial.

2. SAME—*Special Questions*—*Not Fairly Answered.* When special questions properly submitted are not fairly or consistently answered according to the evidence, a fair trial has not been had and a new trial should be granted.

Appeal from Geary district court; ROSWELL L. KING, judge. Opinion filed April 10, 1915. Reversed.

*R. W. Blair, C. A. Magaw*, and *T. M. Lillard*, all of Topeka, for the appellant.

*John E. Hessin*, of Manhattan, *James V. Humphrey*, and *Arthur S. Humphrey*, both of Junction City, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued to recover for the death of her husband. She alleged that on the 24th of August, 1912, at Milford station, while passing over the tracks of the defendant's railroad on the public highway her husband was run over by an engine and train of the defendant and killed; that the death was caused by the defendant's negligence in that, though the night at the time and place of the casualty was dark and that portion of the track between the highway and the station where the train was just before the deceased reached the track was concealed from view of the portion of the highway on which the deceased approached because of an elevator and box cars then standing on

the east side of that part of the track; that the defendant operated its train with the engine running backwards and without a headlight, thereby creating the deceptive appearance that the train was moving in the opposite direction from that in which it was moving, and that the defendant had no light or else a dim and grossly insufficient light on that end of the engine in the direction in which it was moving, and had no person stationed on the engine to keep a lookout and give warning, and that the engineer and fireman were running the engine without taking any precaution to avoid running over persons who might be passing over the track, and without having whistled or rung the bell or given other signal of the approach of the train to the highway. There was a further allegation of gross negligence. The answer consisted of a general denial and the allegation of negligence on the part of the deceased. The plaintiff recovered, and the defendant appeals and assigns error upon the overruling of the defendant's demurrer to the evidence, its motions to direct a verdict, for judgment on the special findings, to vacate and set aside such findings, and in giving and refusing instructions.

The jury found that the body was discovered about three hundred feet south of the crossing; that one of the defendant's northbound trains passed over it before it was discovered by any one; that it was then lying about three hundred and five feet south of the crossing; that there was an elevator which obstructed the view of the deceased if he approached the crossing from the east; that there was not sufficient moonlight on the night of the injury to enable one approaching the crossing from the east to see a locomotive and freight cars standing upon the main line about one hundred and fifty feet north of the crossing; that the deceased was on the crossing when he was first struck by the train; that if he approached from the east there was nothing to prevent his hearing the locomotive if

it was moving southward towards the crossing at the time; that had he exercised ordinary care he could have heard the whistle a certain witness testified to hearing, had the engine whistled before it reached the crossing. Question No. 15 and the answer were as follows:

"Q. If you find that the said John Roediger was run upon and killed by defendant's locomotive, state whether or not by the exercise of ordinary care he could have seen and heard said locomotive in time to have avoided a collision with it? A. If the defendant had had their engine equipped with a headlight and customary caution taken when train went over said crossing, he could have seen and heard said train."

It was alleged that the collision occurred about 10:30 o'clock of the night of August 24, and the jury found that the deceased left the picnic grounds (near Milford) between nine and ten o'clock p. m. of that evening. The body was not found until Monday, August 26. There was testimony that the deceased had good sight and hearing, was a fast walker and an active man; that on the evening in question he seemed to be in good health and spirits; and that in going from Milford to his home, two and one-half miles distant, or returning, he was careful when crossing the track and looked and listened to see whether there was a train coming. There was a picnic at Milford on the day in question, and one witness, a young lady, testified that she left the grounds for home about eleven o'clock; that going along the highway she crossed the tracks; that there was a train north of the crossing; that the engine attached to the train was headed north, that is, it was turned towards the train, that the lights looked like two little lanterns, one on each side. They looked like ordinary lanterns; that after she had crossed the tracks and gone along for about a half mile she heard the train whistle as it pulled out. She did not notice the ringing of a bell or hear any escaping steam; that when she crossed the train was from one hundred to

one hundred fifty feet north and she saw the engine and train clearly. There was testimony that the deceased sometimes walked along the track south from the crossing before turning west. The moon set at 1:56 in the morning.

The theory of the defendant is that the deceased was struck while walking down the track some distance below the crossing, and much evidence was introduced to show the location of the body and certain dismembered limbs, and that certain articles and particles of clothing were scattered from the south side of the crossing to a distance far south of where the body was found, so that there was testimony supporting or tending to support both this theory and that of the plaintiff that the deceased was struck at the crossing as the jury found.

The undisputed testimony showed that after passing the elevator in coming to the crossing from the east there was a space between the switch track and the main track variously estimated at from twelve to forty feet, from which space one could see north as far as the depot, some four hundred or five hundred feet. It is argued on the one hand that the deceased must have seen the engine if approaching him from a distance less than this, and on the other; that had he seen the lanterns on the engine approaching backwards they would not have given him warning of an on-coming train, but might well have impressed him as a distant or unimportant light of no particular significance.

The young lady already referred to was the only witness who testified to the presence of a train near the crossing, and it is urged that such a combination as she described would not give the warning of an ordinary locomotive moving head first and equipped and operated in the usual way. Manifestly the jury acted upon the theory that the reversed engine seen by her struck the deceased on the crossing, and that he was exercising ordinary care to avoid collision or injury.

It became the more important, therefore, to ascertain the facts as to the use of such care by him, considering not only his instinct of self-preservation, but the evidence touching his alertness when approaching a crossing over this track. To this end question No. 15 was submitted, and the response is such that counsel for the defendant requested the court to direct the jury to answer it more definitely, which request was refused. If by the exercise of ordinary care he could have seen and heard the locomotive in time to avoid a collision, of course there could be no recovery, for in that case the injury resulted from his own carelessness as well as that of the defendant. A negative answer would have been in favor of the plaintiff, while an answer in the affirmative would necessarily preclude a recovery. But instead of giving a direct answer the jury replied, in effect, yes, if the engine had been equipped with a headlight and used with customary caution. But the point as to the engine being so equipped or so used does not appear in the question nor belong in the answer. The young lady could see the engine about one hundred and fifty feet away while she was crossing, and the defendant had a right to a finding by the jury whether or not, after passing the elevator, the deceased could by the use of ordinary care have seen the engine in time to avoid a collision with that engine equipped as it was; not what he might have seen and avoided had an engine differently equipped been used. By their answer to question No. 9 the jury said there was nothing to prevent hearing the locomotive if it was moving towards the crossing, if the deceased was approaching from the east. The answer to question No. 8, that the elevator obstructed his view so as to prevent his seeing the engine in time to avoid collision, is somewhat remarkable, considering the fact that the elevator is seventy-five feet north of the crossing, and that after coming to the switch track there is from twelve to forty feet space before reach-

ing the main track, on which the engine stood when the young lady crossed, from which space one could see north several hundred feet.

No. 8 was answered to the effect that the evidence showed there was not sufficient moonlight to see an engine and cars standing on the main line about one hundred fifty feet from the crossing, notwithstanding the young lady's evidence that she saw them clearly when she was crossing the track, which would indicate that the shadow claimed to have been cast by a near-by hill did not interfere with her view.

A motion was made to set aside most of the findings because inconsistent and unsupported, against the weight of the evidence, and given under the influence of passion and prejudice. Judgment on findings 1, 2, 3 and 9 was asked, both of which motions were denied.

Fault is found with the instructions, but they appear to have fairly and correctly stated the law, save in one respect. The jury were charged that where circumstantial evidence alone is relied on to establish any essential fact, "all of the circumstances and the preponderance of the same must concur, relate to and all to point fairly and reasonably to the establishment of the fact or issue for which they are offered to prove and claimed to establish and that the chain of circumstances must be so complete and without break as that no other reasonable conclusion can be drawn from the same except that they show the existence of the issue or fact which they are offered to prove." This too nearly approaches the rule applying to circumstantial evidence in a criminal case when alone relied on for a conviction. In civil cases a preponderance of the evidence—the greater convincing weight—ordinarily controls whether the evidence be direct or circumstantial.

A careful examination and consideration of the entire case leads to the conviction and conclusion that the questions, few in number, properly submitted, were not fairly or consistently answered according to the evidence, and a fair trial was not had, and that for this

reason it was error to deny a new trial. (*K. P. Rly. Co. v. Peavey*, 34 Kan. 472, 8 Pac. 786; *S. K. Rly. Co. v. Michaels*, 49 Kan. 388, 30 Pac. 408; *A. T. & S. F. Rld. Co. v. Wells*, 56 Kan. 222, 42 Pac. 699; *Elevator Co. v. Railway Co.*, 89 Kan. 38, 130 Pac. 686; *Willis v. Skinner*, 89 Kan. 145, 130 Pac. 673; *Corley v. Railway Co.*, 90 Kan. 70, 133 Pac. 555; *Burnett v. Street Railway Co.*, 90 Kan. 282, 133 Pac. 534.) In view of this conclusion certain other points presented and argued need not be considered.

The judgment is reversed and the cause remanded with directions to grant a new trial.