No. 22,818.

BERTIE HARMON, *Appellee,* v. THE ELECTRIC THEATRE COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. WITNESS—*Proper Cross-examination Concerning Contradictory Statements Formerly Made by Witness.* In an action by a woman for damages for personal injury, where her husband, as one of her witnesses, testifies concerning the extent of her disability after her injury, it is proper to cross-examine the husband concerning contradictory statements made in a petition for a divorce filed by him against his wife.

2. SAME—*Material Error in Refusing Proper Cross-examination* It is material error to refuse to permit such cross-examination where it might have resulted in a modification of the testimony of the witness, or would have given an opportunity to question the truthfulness of the testimony, on the argument to the jury.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed October 9, 1920. Reversed.

*Edwin S. McAnany, Maurice L. Alden, Thomas M. Van Cleave,* all of Kansas City, and *John J. Cosgrove,* of Kansas City, Mo., for the appellant.

*W. W. Holloway, William H. Thompson, Fred Robertson,* and *Edward M. Boddington,* all of Kansas City, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff was injured on November 11, 1917, while patronizing a theatre operated by the defendant as a paid guest. On November 7, 1919, she recovered judgment in the sum of $4,000 for damages caused by the injury. The defendant appeals.

1. The principal complaint is that the defendant was not permitted to properly cross-examine William L. Harmon, husband of the plaintiff and a witness for her. He testified in substance as follows:

"Q. Well, has she performed her household duties? A. She has not.

"Q. Subsequent to this injury has she done her work? A. No, sir.

"Q. What—state what you observed, if anything, unusual or out of the ordinary, about her actions around in the preparation of meals and serving of them and so forth. A. Well, in her cooking and washing dishes she drops things more or less every day, such as skillets or dish— take a dish in her hand, in her left hand, she will drop it.

"Q. What is the most recent example of that, that you recall? A. Well, just a few days ago she called me to get up and eat some breakfast, and I got up and sat down at the table, and she got some coffee, tried to pour me some coffee, and she spilled coffee on my shoulder . . . and down my side. That is about eight days ago, as well as I can remember, eight or ten days ago, something like that.

.　.　.　.　.　.　.　.　.　.　.　.

"Q. Now, Mr. Harmon, over what period of time has your wife performed her usual, regular household.duties since she was hurt? A. Well, my wife does not do all of her household duties; I help her all the time.

.　.　.　.　.　.　.　.　.　.　.　.

"Q. Now then, how long preceding this time, now, has she been doing a part of her household work there? A. Well, I could not just exactly say just exactly how long it has been.

"Q. Well, give us your best judgment as to whether it has been a month or six months or a year, or if she has always done it, just so the jury can get an idea here. A. No, sir; she has not always done it; it is just right here of lately she has been, well, I will say for the last four months that she has been helping me around fixing meals, such as turn over meat and put coffee in the coffee pot, something like that, set the table.

"Q. Who has been doing your washing and laundry work and such as that? A. My wife's daughter.

"Q. Prior to the injury that she received, who did it?   A.  She did it herself.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q. Now, prior to that hadn't she been doing work around the house? A.  Well, she done some, and then she got so she could not do very much.

"Q. She did some work around there, didn't she, cooked meals and washed dishes and wiped dishes and things like that, didn't she?   A. Never washed very many dishes, because she broke all them."

After Harmon had thus testified and had been cross-examined, he was recalled for further cross-examination. Several questions were then asked him, to each of which an objection was sustained. We quote from the defendant's abstract:

"The defendant offers and asks to recall the witness William Harmon for the purpose of asking him on cross-examination whether or not on June 13, 1919, he filed a petition for divorce in cause number 11448, in the District Court of Wyandotte County, Kansas, duly verified by his own affidavit and sworn to on June 11, 1919, before Catherine M. Hanson, a notary public of Jackson County, Missouri, in which petition he states that on the 28th day of April, 1912, in the City of Kansas City, County of Jackson, and State of Missouri, he was lawfully married to the defendant, that the plaintiff continued to live with the defendant as her husband from and after the day and year aforesaid until on or about the first day of December, 1918; that during all that time plaintiff faithfully demeaned himself and discharged all his duties as the husband of the defendant and at all times treated her with kindness and affection; that the defendant wholly disregarding her duties as the wife of the plaintiff, did fail and neglect to perform those duties incumbent upon the marital relation by being faithful, affectionate and dutiful wife, and did on numerous occasions fail and neglect to prepare plaintiff's meals; that plaintiff was compelled to go to his work without breakfast, and on numerous occasions would return to his home and find the defendant absent and his meals unprepared.   The defendant further offers or asks permission to ask the witness the question as to whether or not he verified this petition containing the following: 'Plaintiff states that said defendant would not stay at home, but rather would stay away from home and on many occasions would not return until very late at night, that she failed and neglected to inform the plaintiff of her whereabouts on such occasions, and that the defendant seemed to enjoy the companionship of others in preference to the plaintiff; that defendant was of an extremely quarrelsome and nagging disposition, and on one occasion without cause or provocation caused plaintiff to be arrested by the civil authorities of Kansas City, Kansas, and that the charge against this plaintiff was dismissed.' 'That defendant has repeatedly told plaintiff that she did not care for him, but did care for some other man who is possessed of more money than the plaintiff; that defendant has on

Harmon v. Theatre Co.

a number of occasions accused plaintiff falsely and unjustly of infidelity.'
We ask to ask those questions, and we wish to show to the court that
we had no knowledge of the existence of the petition when the plaintiff
left the stand, and that our attention was called to these facts since the
plaintiff left the stand as a witness on the trial of this case.

"To which the plaintiff objects for the reason that it is incompetent,
irrelevant and immaterial, not proper cross examination, and it does not
contradict or tend to contradict any statements previously made by the
plaintiff.

"Objection sustained."

The offered cross-examination did not concern the conduct
and actions of the plaintiff; it concerned the allegations of the
petition that had been filed by the witness for a divorce from
the plaintiff. The petition contained allegations that were in-
consistent with the testimony of the witness. The fact that
he filed a petition for a divorce with allegations therein as set
out in the offer of the defendant was inconsistent with his testi-
mony on the trial of the present action. It is well established
that a party to an action has a right to cross-examine a witness
concerning inconsistent or contradictory statements made by
him on another occasion. (*S. K. Rly. Co. v. Michaels*, 49 Kan.
388, 395, 30 Pac. 408; *The State v. King*, 102 Kan. 155, 157,
169 Pac. 557; 40 Cyc. 2687, 2714.) It was error not to permit
the requested cross-examination of the witness.

2. Was that error material? The defendant complains of
the amount of the verdict. The principal witness concerning
the extent of the disability of the plaintiff, other than herself,
was William L. Harmon. If cross-examination of him con-
cerning the allegations of his petition had been permitted, it
might have resulted in a modification of his testimony con-
cerning the disability of his wife. At any rate such cross-
examination would have shown the inconsistency between the
allegations of his petition for a divorce and his testimony in
the present action, and an opportunity would have been pre-
sented to question, on the argument to the jury, the truthful-
ness of his testimony on the trial, and a verdict for the de-
fendant or for a smaller amount might have been returned.
It therefore must be concluded that it was material error to
refuse to permit the cross-examination requested.

The judgment is reversed, and a new trial is directed.