[No. 2244.]

ROCHE ET AL. v. THE DENVER & RIO GRANDE RAILROAD COMPANY.

1. **Master and Servant—Safe Place and Appliances—Vice Principal.**

It is the duty of the master to exercise ordinary care in seeing that his servants are provided with a reasonably safe place in which to work, and that the instrumentalities and appliances to be used by them are in a reasonably safe and suitable condition, and he cannot escape responsibility for a disregard of such duty by delegating its performance to an employee. An employee to whom such duty is delegated, without regard to his rank, is, in the performance of such duty, a representative of the master and not a fellow-servant with other employees, and his negligence is the master's negligence.

2. **Master and Servant—Railroad Companies—Negligence—Condition of Loaded Cars.**

A railroad company is responsible to its employees for the condition of its cars when turned over to them, if such condition was, or by the exercise of reasonable care might have been, known to it, and its responsibility extends to the condition of the load upon the car as well as to the car itself.

3. **Same—Instructions.**

A railroad brakeman, while helping to make up a train of cars in which was a car loaded with mining timbers, and while between the cars in the performance of his duty was killed by a log which projected over the end of the car. In an action for damages for the death of the brakeman, held that the questions of the company's negligence in permitting the car to be turned

over to its employees with the log projecting, and the contribu-
tory negligence of the deceased, should have been submitted to
the jury, and it was error to direct a verdict for defendant.

*Appeal from the District Court of Arapahoe County.*

Messrs. PATTERSON, RICHARDSON & HAWKINS, for
appellants.

Messrs. WOLCOTT & VAILE, and Mr. WM. W.
FIELD, for appellee.

THOMSON, P. J.

This action was brought by the appellants·
against the appellee to recover for the loss of their
son, James Roche, Jr., a brakeman in the employ of
the appellee, who was killed on the 30th day of
December, 1898, while supposedly engaged in the dis-
charge of his duties as such brakeman.  The com-
plaint alleged that while a train of cars, operated by
the defendant, was at Leadville, the defendant caused
young Roche to go between two of the cars of the
train for the purpose of making or unmaking an air
coupling, or for some other purpose which required
his presence between the cars; that while so engaged,
he was caught between the deadwood of one of the
cars and a log projecting from a load of logs upon
the other, and killed; that the projection was due
either to negligent or unskillful loading of the logs
upon the cars, or to some cause operating subse-
quently; that the cause of the accident was the forcing
of the cars together by an attempt to couple a helper
engine to the rear of the train; that the dangerous
condition of the load was, or should have been, known
to the defendant, but was unknown to the deceased,
and that the injury was received without fault or
negligence on the part of the deceased.

The answer put in issue all of the allegations of
the complaint, and averred that the injuries received

by Roche, if any were received by him, were due to his own want of care, or to the negligence of his fellow-servants.

The defendant was operating a branch of its road running between Leadville and Ibex. Herman O. Bair was the conductor in charge of that branch. Roche came to Leadville on the night of the 28th of December, having been sent there by the defendant's trainmaster from Salida, and reported to Bair, who was unacquainted with him, for work. Bair gave him work on the 29th as head brakeman. On the morning of the 30th, Roche assisted Bair in making up a train, consisting of four cars of coal and a car of rough logs, intended for mining timbers, and in getting out a flanger. The logs were of different sizes. In making up the train, Bair observed that a coal car intended for the train was marked ''Cracked Flange.'' This car was ordered detached, and the other four were pulled out upon the main line. The grade from Leadville to Ibex is quite steep, and a helper engine was ordered attached to the rear of the train. The flanger was behind the head engine, the car of logs followed it, and the coal cars came next. The timber car and the coal cars were coupled together when they were put into the train. No air was to be used on the train that morning, and whether the air hose between these two cars was coupled together, the witnesses did not know. Immediately after the contact of the helper engine with the rear of the train, Roche was found lying beside the track on the left side of the cars with his head crushed in, and it was then discovered that a log lying on the floor of the timber car projected beyond the end of that car and towards the coal car behind it, about ten inches, so that if the two cars were jolted together the end of the projecting log would strike the deadwood of the coal car to the left of the drawhead. The

ends of the other logs were even with the end of the car on which they rested. Blood was found on the end of the projecting log and on the opposite dead-wood of the coal car. The time of the accident was near sunrise. One of the witnesses said the sun was not up at the time, and it was not full daylight. The weather was quite cold. The company had provided inspectors at Leadville, whose duty it was to see that the cars generally were in good order before they were started. These inspectors had marked a car "Cracked Flange," and it was detached. Their duties, however, were confined to an inspection of tracks, gears and wheels. They did not inspect loaded cars. The duty of such inspection devolved upon the conductor. On this occasion he made a very slight inspection—to use his language, he merely walked up the side of the cars and overlooked them generally. He did not see the projecting log. Whether the projection occurred in the loading, or was attributable to some other cause, no witness positively knew. Bair, however, testified that this log must have been "sticking out" before the helper engine was coupled on; that logs were usually rolled on the car in any way, but they generally bound each other, and that, as a rule, whenever shunting occurred, the whole load shifted together. Roche did not go between the cars in obedience to any direction from the conductor; but, according to the testimony of the latter, it was his duty, without specific direction, to couple or uncouple cars, to couple or uncouple air hose, and whenever he observed anything that he thought needed attention, to attend to it, and go between the cars for the purpose.

The trial court, after hearing the evidence, directed the jury to return a verdict for the defendant. This was done accordingly, and judgment entered on the verdict.

We think the case should have been submitted to the jury. It is the duty of the master to exercise ordinary care in seeing that his servants are provided with a reasonably safe place in which to work, and that the instrumentalities and appliances to be used by them are in a reasonably safe and suitable condition. And he cannot escape responsibility for a disregard of his duty by delegating its performance to an employee. Such employee, without regard to his rank, would represent the master; he would not be a fellow-servant of the other employees, and his negligence would be the master's negligence.— *Grant v. Varney,* 21 Colo. 329; *Milling & Elevator Co. v. Mitchell,* 26 Colo. 284; *McKean v. Fuel & Iron Co.,* 18 Colo. App. 285, 71 Pac. 425.

Whether we regard the train of cars as the place on and about which Roche was required to work, or the cars as the instrumentalities and appliances he was required to use, is immaterial. The same principle is applicable in either case, and for brevity we shall treat the cars as appliances. Now one of the appliances furnished to Roche was a car loaded with mining timbers. Car and load together constituted the appliance; and if the load was in a dangerous condition, the appliance, of which it was a part, also was. In his testimony, Bair, the conductor, said: "Anything in reference to the car itself or to the load which is upon it, which enhances the danger of operating it, either to the company or the employee, is a bad-order car." Whether the log was placed in its dangerous position at the loading of the car, or was afterwards forced backward by the motion of the train, or otherwise, does not directly appear; but whatever the cause, the company was responsible for the condition of the car when it was turned over to Roche, if such condition was, or, by the exercise of reasonable care, might have been, known to it.—*Cor-*

*bin v. Railroad Co.,* 64 Minn. 185; *George v. Clark,* 85 Fed. 608; *Hannah v. Railroad Co.,* 154 Mass. 529; *Grant v. Varney, supra; Milling and Elevator Co. v. Mitchell, supra; McKean v. Fuel & Iron Co., supra.*

But it is contended that there was no evidence that prior to the jolt caused by the coupling of the helper engine, this timber projected beyond the others; that a condition which did not exist could not have been known, and that the absence of some kind of a showing of its previous projection was a fatal failure of proof. It is true that the projection had not been seen by any witness until after the accident; but Bair testified that, as a general rule, in the case of a load of logs, when there was a shunting, the whole load shifted together. It is true, he said, that this particular log may not have been bound by the other logs, but he expressed the opinion that it must have projected before the coupling. It would also seem from the statements of this witness that, as a rule, logs were loaded carelessly. He said they were generally rolled on in any way. His testimony, taken as a whole, presented an important question of fact, to be settled, not by the court, but by the jury. If, as a general rule, whatever would cause a movement among the logs would shift the whole load; as no reason was shown why this load was not subject to the general rule, and as the abrupt coming together of the cars did not disturb the other logs, an inference would be, at least, allowable that it did not disturb this. Indeed, reasoning from the probability that whatever would move one stick of timber would move the entire load, the jury might have found that the original position of the log had not been changed— that it was left projecting when it was put upon the car; and such conclusion would be strengthened by the evidence of the careless manner in which logs were loaded upon cars.

But it is insisted that Roche ought to have seen the projecting timber, and that, with the projection visible before him, his placing himself in a position of exposure to injury from it, was his own negligence. It may be that Roche was guilty of such contributory negligence as would preclude a recovery in this action, but we do not think the evidence so conclusive as to warrant the trial judge in taking the question from the jury.. It must be presumed that he went between the cars for some purpose connected with his duty as a brakeman; the train was being put in readiness to move, and he may have thought that what he had to do must be done quickly; the time was early morning, and complete daylight had not come; he had the right to assume that the company had seen to the safety of the car; if he was in haste, and proceeding by an imperfect light, the projecting timber may well have escaped his observation; and whether, under all the circumstances disclosed by the evidence, he might justly be charged with contributory negligence, was for the jury to say.—*Railroad Co. v. Everett,* 152 U. S. 107; *Corbin v. Railroad Co., supra.*

As the questions of the defendant's negligence and Roche's contributory negligence could be determined only by the jury, the court erred in directing a verdict.

The judgment must be reversed.

*Reversed.*

Maxwell, J., not sitting.